**Gerald W. HORTON and Susan M. Horton, husband and wife**

v.

**WASHINGTON COUNTY TAX CLAIM BUREAU and E.D. Lewis**

**Appeal of: E.D. Lewis.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2011.

Decided May 21, 2012.

Matthew W. Fuchs, Erie, for appellant.

Joshua R. Lorenz, Pittsburgh, for appellees Gerald W. and Susan M. Horton.

BEFORE: PELLEGRINI, Judge,[1] and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

E.D. Lewis (Lewis) and Washington County Tax Claim Bureau (Bureau) appeal from the December 29, 2010, order of the Court of Common Pleas of Washington County (trial court) granting the petition to set aside an upset tax sale filed by Gerald W. Horton and his wife Susan M. Horton. We affirm.

The Hortons reside at 18611 Avenue Monaco, Lutz, Florida. On June 22, 2006, they purchased the property at issue, a

---

**4.** Fisher was only mentioned in Galway's bid proposal to the Authority, which was not part of the contract.

**1.** This case was assigned to the opinion writer before January 7, 2012, when Judge Pellegrini became President Judge.

condominium unit in the Fairways Condominium at Southpointe, located at 1021 Eagle Point Drive, Canonsburg, in Cecil Township, Washington County, Pennsylvania. The Hortons paid $200,000 cash for the property; they executed the purchase via mail and fax and relied on a settling agent, Mezzo Settlement Services (Mezzo).

The deed to the property contained three errors: the Hortons' names were listed as "*Jerry* W. Horton" and "Susan *W.* Horton," and their residence was certified as 1021 Eagle Point Drive instead of their Florida residence. At the time of closing, Mr. Horton instructed Mezzo to provide the Florida address to the tax collector for real estate billing related to the property, but Mezzo apparently failed to do so.

The condominium was used for business purposes related to the Hortons' company, USG Insurance Services, Inc. (USG), which is headquartered at 14499 North Dale Mabry, Tampa, Florida, and has a local office at 1000 Town Center Way, Canonsburg, Pennsylvania.[2] The property was not occupied and had no mailbox key, since mail was not delivered to that address.[3] At all relevant times, the only address the Bureau had for the Hortons was the address derived from the deed.

The Hortons did not pay property taxes for the years 2007 and 2008 prior to the September 23, 2009, tax upset sale. Lewis purchased the property on that date for the upset price of $10,298.96; there were no competitive bidders. David Holland, Esq., Lewis' attorney, eventually located the Hortons in the course of an action to quiet title. On November 18, 2009, the Hortons filed a Petition to Open/Set Aside the Upset Tax Sale.

The trial court held a hearing on April 22, 2010. During the hearing, Yvonne Orsatti, the Bureau's finance and operations manager, testified that the Bureau took the following steps. On April 2, 2008, the Bureau sent a courtesy letter to the Hortons at the Eagle Point Drive address; it was returned by the United States Postal Service (USPS) with the notation "No such number." On May 6, 2008, the Bureau checked and found no records for the Hortons in the Prothonotary's Office, the County Tax Assessment office, or the County Treasurer's Office, and the 2007 Lien Docket revealed no change of address. The Bureau also checked Accurint Search Assistant, an internet search, which revealed a Susan W. Horton in Lancaster Pennsylvania, and revised the records in the Tax Assessment Office accordingly. On February 18, 2009, the Bureau checked voter registration records and found no listing for either of the Hortons; it also conducted an address search on "Switchboard," an on-line directory, which revealed the Eagle Point Drive address for both Hortons and indicated that their telephone number was unpublished. A search in Accurint (PA) turned up 89 listings for Jerry/Gerald Horton and 13 for Susan Horton. In March 2009, a delinquent tax statement was mailed to the Lancaster address and returned by the USPS marked "Return to Sender—Attempted—Not Known–Unable to Forward." The Bureau then changed its records back to reflect the Eagle Point Drive address. On May 26, 2009, the Bureau again checked the Prothonotary's Office and the Register of Wills, the Tax Assessment office and the

---

2. The company's Canonsburg office is also in Southpointe. Mr. Horton testified that the company has 44 employees at that location, including his son and daughter-in-law. (R.R. at 134a, 145a, 171a.)

3. Initially, bills for utilities at the condominium were sent to USG at the Canonsburg, Pennsylvania, address. Subsequently, bills for gas, electric, phone, and cable television were addressed to USG in Florida.

Treasurer's office and found the same Eagle Point Drive address. The Bureau sent a courtesy pre-sale warning letter to the Hortons on May 29, 2009, by first class mail, which was returned by the USPS marked "Return to Sender—Attempted–Not known—Unable to Forward."

The Bureau sent 2009 Upset Tax Sale notices via certified mail, restricted delivery, to each of the Hortons on July 14, 2009, to the Eagle Pointe Drive address, and each was returned with the notation "Not Deliverable as Addressed–Unable to Forward." On July 22, 2009, a Bureau agent posted the property and signed an affidavit indicating that personal service was attempted but not made because there was no answer at the property. The Bureau advertised the property for the September 23, 2009, tax upset sale in the county legal journal and local newspapers on August 20, 2009.

The second Sale Notice for the 2009 Tax Upset Sale was sent by first class mail on August 27, 2009, to each of the Hortons at the Eagle Pointe Drive, Canonsburg, Pennsylvania, address. Both notices were returned by the USPS marked "Not deliverable as addressed-Unable to forward." (Trial court's Finding of Fact No. 8k.)

In addition to Orsatti's testimony, the Bureau submitted all Bureau records related to the property and the tax sale as well as a summary of the tax sale procedures followed by the Bureau, which was prepared by Orsatti after the tax sale. Among the Bureau's documents were a "United States Postal Service Consolidated Postage Statement–First Class or Priority Mail," dated August 27, 2009, which reflects a mailing of 2,913 pieces, (R.R. at 289–90a), and an attachment containing a list of property owners to whom the August 27th mailings were sent. The Bureau also submitted the envelopes sent separately to Mr. and Mrs. Horton on August 27, 2009, via first class mail, addressed to each at the Eagle Pointe Drive address and returned to the Bureau by the USPS on or about September 10, 2009. (R.R. at 295a–96a).

Jerry Horton testified that he did not prepare the deed to the property, and he did not know whether Mezzo provided the Florida address to the Bureau. He stated that he and his wife purchased the property personally but that the condominium was intended to be used by their business. Horton acknowledged that his son and daughter-in-law work for USG in Southpointe, but he said he had no way of knowing whether they ever checked on the property. According to Horton, his records showed that no one had used the condominium since July 8, 2009, prior to the posting of the property on July 22nd. He also stated that there was no mail key and that no mail was delivered at the property. Horton stated that he never received any tax bill for the property, he was not aware that taxes had not been paid by the business, and his accountant never asked about real estate taxes as a personal or business expense. He added that the Homeowners Association had his Florida address and that his owners' fees were paid up to date.

Holland, Lewis' attorney, testified about the efforts he made to locate the Hortons after he was unable to locate them through the USPS. Holland conducted a Google search of the 1021 Eagle Pointe Drive address, which listed USG Insurance and a local telephone number; he called the number which did not answer but instead asked for a remote access code. Holland then directed Lewis to drive through the neighborhood to locate the condominium sales office. Eventually Holland located the Fairways Home Association office, in Ohio, and persisted until an employee provided him with the Hortons' Florida contact information. Tamara Potts, an employee of T & R Properties of Dublin,

Ohio, described her company's management of affairs for the Fairways Home Association, which includes the receipt of dues from homeowners.

At the conclusion of the April 22, 2010, hearing, the Hortons' counsel summarized their position as involving these two issues: 1) whether the Bureau failed to conduct a reasonable investigation to locate the Hortons after notices of the tax sale by certified and regular mail were returned; and 2) whether the Bureau satisfied the statutory requirement that its investigative efforts be logged in a file.[4]

By opinion and order dated December 29, 2010, citing *In re: York County Tax Claim Bureau; Donalynn Properties, Inc. v. York County Tax Claim Bureau, Appeal of Luciani,* 3 A.3d 765 (Pa.Cmwlth. 2010), the trial court set aside the tax sale on the basis that the Bureau failed to satisfy the notice requirements of section 602(e)(2) of the of the Real Estate Tax Sale Law (Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.602(e)(2). Specifically, the trial court concluded that the Bureau failed to provide proof of mailing of the first class mail notices sent to the Hortons on August 27, 2009. The trial court granted the Hortons' Petition to Open/Set Aside the Upset Tax Sale, and Lewis now appeals to this Court.[5]

Initially we note that section 602 of the Law requires that notice of a scheduled tax sale be provided by three separate methods: publication at least thirty days prior to sale; notification by certified mail at least thirty days prior to sale; and posting on the property at least ten days prior to sale. 72 P.S. § 5860.602(a), (e).

There is no dispute that the publication, certified mail, and posting requirements were satisfied in this case. With respect to the notice by certified mail, the statute also states that if a return receipt is not received from the property owner, "then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, **proof of mailing,** at his last known post office address...." Section 602(e)(2) of the Law, 72 P.S. § 5860.602(e)(2) (emphasis added). We addressed the meaning of this requirement in *York.*

In *York,* the tax claim bureau sent a Notice of Public Tax Sale via certified mail, restricted delivery, return receipt requested, to the owner's Maryland post-office-box address. The notice was ultimately returned to the bureau as unclaimed. According to the bureau, it again mailed notice to the owner via first class mail to the same address. The property was sold to John J. and Ann K. Luciani at a tax upset sale, and shortly thereafter, the owner filed a petition to vacate the sale. At the hearing, the owner explained that he had been in an accident, had been laid up for some weeks afterwards, and had not made any trips to the post office during the months in which the notices were mailed. The tax claim bureau offered evidence of mailing, which consisted of testimony by a bureau employee that she sent the first class notices out on a specific date and made notations that she had done so on a bureau document, in accordance with the bureau's customary practice. The internal bureau document,

---

4. With regard to the latter issue, there was no dispute that the relevant information was logged, but the Hortons claimed that the statute required the notations to be made contemporaneously with the Bureau's efforts.

5. Our scope of review in a tax sale case is limited to determining whether the trial court committed an error of law, abused its discretion, or rendered a decision without supporting evidence. *Casaday v. Clearfield County Tax Claim Bureau,* 156 Pa.Cmwlth. 317, 627 A.2d 257 (1993).

containing a checkmark beside a dated entry stating "SENT NOTICE OUT FIRST CLASS," also was submitted into evidence.

The trial court determined that the bureau failed to provide the owner with proper notice under section 602(e) of the Law and that the owner did not have actual notice of the tax upset sale. Accordingly, the trial court vacated the tax upset sale, and the Lucianis appealed. In relevant part, the Lucianis argued that, even if the owner did not have actual notice of the tax sale, the bureau properly complied with all of the notice requirements of the Law.

Addressing an issue of first impression, this Court held in *York* that the "proof of mailing" requirement in section 602(e)(2) of the Law refers only to a USPS certificate of mailing, also known as USPS Form 3817. In reaching that conclusion, the Court first examined the statutory language in the context of the Law's other notice provisions. The Court observed that all other types of mailing specified in the statute are USPS services and that the phrase "proof of mailing" immediately follows "United States first class mail," which is exclusively USPS terminology. Based on the plain language alone, the Court concluded that the legislature intended "proof of mailing" to mean a USPS form and determined that the only official record providing that proof was a USPS certificate of mailing. We also recognized in *York* a need for statewide uniformity with respect to the ten-day notice, which is the final notice sent to a property owner before a tax upset sale. Finally, we concluded that requiring a USPS certificate of mailing does not impose an onerous burden on county tax bureaus. For all of those reasons, we held that the "proof of mailing" requirement of section 602(e)(2) refers to a certificate of mailing obtained from the USPS, and, because the bureau's evidence did not satisfy that requirement,

we affirmed the trial court's order vacating the tax upset sale.

Lewis acknowledges our holding in *York* that the phrase "proof of mailing" in section 602(e)(2) refers to an official USPS certificate of mailing. However, Lewis argues that the facts of this case are distinguishable from those in *York*, noting that the Bureau's evidence includes more than an employee's testimony and handwritten notes. Here, the Bureau also submitted a "United Stated Postal Service Consolidated Postage Statement," together with an attachment showing the taxpayers to whom mailings were sent on that date, *and* the actual envelopes sent to the Hortons and returned with the USPS' official stamp. Lewis asserts that, under these circumstances, there can be no doubt that the Bureau complied with the requirement to send the second notice by first class mail and that it did so on August 27th. Lewis further maintains that, under the facts of this case, the trial court erred in setting aside the tax sale on the basis that the Bureau failed to provide proof of mailing of the second tax sale notice, particularly where the trial court specifically found that the Bureau sent the second notice by first class mail on August 27th. According to Lewis, the trial court's conclusion exalts form over substance and leads to an absurd result that the legislature never intended. We disagree.

We note that our decision in *York* was not issued until after this tax sale took place. In addition, the record reflects that the Bureau was aware of the previously undefined "proof of mailing" requirement and acted in good faith to satisfy that requirement. Although we recognize that this case is factually distinguishable from *York*, we nevertheless conclude that the rationale set forth in *York* applies equally here; the plain language of the statute compels the conclusion that the statutory "proof of mailing" can only be satisfied by

a USPS certificate of mailing, and the value of statewide uniformity for the 10–day notice outweighs the minimal burden imposed on county tax bureaus. Moreover, although the decision was issued after the relevant events of this case occurred, our holding in *York* is dispositive of the issue before us.[6]

Accordingly, we affirm.

## ORDER

AND NOW, this 21st day of May, 2012, the order of the Court of Common Pleas of Washington County, dated December 29, 2010, is hereby affirmed.

See also, 996 A.2d 68.

---

**6.** In addition to determining that the tax sale was invalid pursuant to *York*, the trial court opined that the Bureau failed to conduct a reasonable investigation to determine the Hortons' whereabouts as required by section 607(a) of the Law, 72 P.S. § 5860.607(a). Although the trial court specifically cited the Bureau's failure to conduct an internet search of the property, the trial court did *not* decide that such a search is required under the "reasonable efforts" analysis.

Based on our determination that *York* controls the outcome here, we need not address Lewis' remaining argument that the Bureau did, in fact, make a reasonable effort to locate the Hortons after the certified mailings were returned, as required by section 607(a) of the Law. We do emphasize that the trial court's discussion of this issue was dicta.