81 A.3d 883

**Gerald W. HORTON and Susan M. Horton, Husband and Wife,**

v.

**WASHINGTON COUNTY TAX CLAIM**
**BUREAU and E.D. Lewis.**

**Appeal of E.D. Lewis.**

Supreme Court of Pennsylvania.

Argued April 9, 2013.

Decided Dec. 16, 2013.

114

Matthew W. Fuchs, Esq., MacDonald, Illig, Jones & Britton, L.L.P., Erie, for E.D. Lewis.

Blane Alan Black, Esq., Monongahela, for Washington County Tax Claim Bureau.

Joshua Rathe Lorenz, Esq., Meyer, Unkovic & Scott, L.L.P., Pittsburgh, for Gerald W. Horton and Susan M. Horton.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice McCAFFERY.

The issue before the Court is a matter of statutory interpretation of Section 602 of the Real Estate Tax Sale Law [1] which sets forth the requirements for notice prior to an upset tax sale for non-payment of delinquent taxes. Specifically, we must determine if the Commonwealth Court correctly held that "proof of mailing" in subsection 602(e)(2) refers exclusively to United States Postal Service (hereinafter "USPS") Form 3817, also known as a Certificate of Mailing.

The relevant facts are not at issue and are summarized below. *See Horton v. Washington County Tax Claim Bureau,* No. 2009–10264 (Ct. Common Pleas, filed 12/29/10) (hereinafter "Trial Court Opinion"). The property at issue is Unit 1021 in the Fairways Condominium at Southpointe (hereinafter the "Property"), located in Cecil Township, Washington County, Pennsylvania. The Property was purchased by Gerald W. and Susan M. Horton (hereinafter, collectively, "Appellees") on June 22, 2006, for $200,000 cash. It was used for

[1] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–5860.803.

purposes related to their business, USG Insurance Services, Inc., which was based in Florida, with a local office in Washington County. The Property was occasionally occupied by business associates and family; mail was not delivered to the address. The deed to the Property contained three errors: (1) Gerald W. Horton's name was listed as "Jerry W. Horton;" (2) Susan M. Horton's name was listed as "Susan W. Horton;" and (3) a Certificate of Residence filed with the deed to the Property identified Appellees' "precise residence" as 1021 Eagle Point Drive, Canonsburg, PA, 15317 (the Property's address) even though, at all times relevant to this case, Appellees resided in Florida.

At no time relevant to the instant dispute did the Washington County Tax Claim Bureau (hereinafter the "Bureau") receive or determine the correct information as to the location of Appellees' residence. Appellees made no real estate tax payments on the Property for the years 2007 and 2008. On September 23, 2009, still having received no tax payments, the Bureau sold the Property in a tax upset sale. The buyer was E.D. Lewis (hereinafter "Appellant"), who purchased the Property for $10,298.96 without competitive bidding.

Prior to the upset tax sale, the Bureau made a variety of efforts, many of which are required by the Real Estate Tax Sale Law, to try to locate and notify Appellees. Specifically, these efforts included the following. On April 2, 2008, the Bureau mailed a courtesy letter regarding the 2007 unpaid taxes to Appellees at the Property's address; the letter was returned by USPS as "No Such Number." Subsequently, at various times over the next year, the Bureau checked several sources, some sources more than once, in an unsuccessful attempt to determine Appellees' whereabouts.[2] On May 29,

2. The sources checked by the Bureau included the Prothonotary's Office, the Washington County Tax Assessment Office, the Washington County Treasurer's Office, the 2007 Lien Docket, the Register of Wills Office, and voter registration records. The Bureau also did internet searches via the Switchboard on-line directory and Accurint Search Assistance. Via the latter, the Bureau found a Susan W. Horton in Lancaster, Pennsylvania, and sent her a delinquent tax statement in March 2009. The statement was returned by the USPS marked as

2009, the Bureau mailed, via first-class to Appellees at the Property's address, a courtesy pre-sale warning letter advising of the sale scheduled for September 23, 2009, and containing a payment due date of June 30, 2009; the letter was returned by USPS as "Return to Sender—Attempted—Not Known—Unable to Forward." On July 14, 2009, as required by statutory provision 72 P.S. § 5860.602(e)(1), the Bureau sent tax upset sale notices via certified mail, restricted delivery, to each Appellee at the Property's address; each notice was returned by USPS as "Not Deliverable as Addressed—Unable to Forward." On July 22, 2009, as required by statutory provision 72 P.S. § 5860.602(e)(3), a Bureau agent posted the Property; his affidavit indicated that personal service had not been made as there was no answer at the Property. On August 20, 2009, as required by statutory provision 72 P.S. § 5860.602(a), the Bureau gave notice in three local newspapers of the scheduled September 23, 2009 tax upset sale of the Property. On August 27, 2009, as required by statutory provision 72 P.S. § 5860.602(e)(2), second notices of the impending tax upset sale of the Property were sent via first-class mail to each Appellee at the Property's address; each notice was returned by USPS as "Not Deliverable as Addressed—Unable to Forward." On September 8, 2009, the Bureau filed with the Prothonotary's Office a petition to waive personal service.[3]

On September 23, 2009, the tax upset sale was conducted as scheduled, and the Property was sold to Appellant.[4] In

"Return to Sender—Attempted—Not Known—Unable to Forward." The Bureau also sent post-sale notices to this Lancaster address, but these were returned by USPS as "Attempted—Not Known." There is no indication from the record that this individual had or has any relationship to Appellees.

3. The tax collector for Cecil Township also attempted, unsuccessfully, to locate Appellees via the local Sewage Authority, the earned income tax files, and an internet telephone directory. She billed Appellees for the 2007, 2008, and 2009 tax years. USPS returned the 2007 and 2009 tax bills as not deliverable and unable to forward. The 2008 tax bills were not returned. *See* Notes of Testimony, 4/22/10, ("N.T.") at 39–48.

4. Yvonne Orsatti, the Bureau's financial operations manager at the time of the tax upset sale, testified that the Bureau went to the sale with 270 properties and sold approximately 30. *Id.* at 73.

October 2009, the Bureau mailed several post-sale notices to Appellees at the Property's address via certified mail; all were returned via USPS as not deliverable.

After the tax upset sale, Appellant retained David Holland, Esq., to file a quiet title action against Appellees. Mr. Holland was unable to locate Appellees through USPS; utility companies; or several internet sites, including the on-line data service Accurint, Social Security obituaries, and telephone directories. Notes of Testimony, 4/22/10, ("N.T.") at 167–69, 172. Mr. Holland was also unable to learn any information about Appellees' whereabouts when he did an internet search of the Property's address; the search came up with the name "USG Insurance" and a telephone number that yielded merely a recorded message directing one to enter a remote access code. *Id.* at 173–74. In addition, an internet search for a condominium association related to the Property did not yield any helpful information. *Id.* at 169–70. In a further attempt to locate a condominium association office, Mr. Holland then asked Appellant "to canvas the neighborhood" around the Property. *Id.* at 170. Appellant "drove around the neighborhood," found a sales office, and made inquiry. *Id.* From the sales office, Mr. Holland obtained a phone number in Columbus, Ohio, through which, after several calls, he learned of Appellees' business address in Florida. *Id.* at 171–72, 181; *see* Trial Court Opinion at 6–7 ¶ 16. On October 19, 2009, Appellant's counsel served the quiet title action upon Appellees via certified mail, restricted delivery, at their Florida business address. On November 18, 2009, Appellees filed a petition to open and/or set aside the tax upset sale.

The trial court conducted a hearing on the matter on April 22, 2010. Yvonne Orsatti, the Bureau's financial operations manager at the time of the tax upset sale, testified as to the Bureau's procedures prior to and after the tax upset sale. N.T. at 4–38, 72–83. Appellee Mr. Horton testified that he had received no final closing documents, including the deed and title insurance policy, from his settling agent following his purchase of the Property in 2006. *Id.* at 92–93, 96. In addition, he testified that he had never received any tax bill

for the Property, any notice of his tax delinquencies, or any notice of the tax upset sale. *Id.* at 110–12, 115–16, 139. He admitted that the deed to the Property contained three errors, that those errors would make it difficult to locate Appellees, and that the Bureau had not been responsible for the errors.[5] *Id.* at 93–95, 125–31; Trial Court Opinion at 7 ¶ 18.

Before the trial court, Appellees argued that the Bureau had not exercised reasonable investigative efforts to locate them, and, as a secondary argument, that the Bureau had not placed contemporaneous notations in the Property file to document the investigative efforts that had been undertaken. N.T. at 184–90 (closing argument) (citing 72 P.S. § 5860.607a).[6]

On December 29, 2010, the trial court granted Appellees' petition to set aside the tax upset sale, holding that the Bureau had not satisfied the notice requirement of 72 P.S. § 5860.602(e)(2), pursuant to *In Re: York County Tax Claim*

---

**5.** Mr. Horton testified that he had filled out and signed a document provided to him by his settling agent indicating that tax bills and notices for the Property were to be sent to his home address in Florida. N.T. at 91–92, 97–98, 132. He further testified that he had never received a tax bill, did not have "any idea that [the tax bills] weren't paid," and "figured that [the tax bills] had been taken care of ... by [his] accounting department" in Florida as "[a]ll other bills have been routinely paid." *Id.* at 139, 144. Utility bills for the Property were sent to USG's business address in Florida and were paid by USG. *Id.* at 99–109, 121.

**6.** Section 607a(a) requires the Bureau to "exercise reasonable efforts" to discover the whereabouts of a property owner if it appears that he or she has not received notice of an upcoming tax upset sale. In relevant part, Section 607a(a) provides as follows:

... the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

*Bureau,* 3 A.3d 765 (Pa.Cmwlth.2010). Trial Court Opinion at 9, 12. The trial court determined that although the Bureau had complied with the statutory requirements to provide three separate methods of notice prior to a tax upset sale (to wit, publication, certified mail, and posting), it had failed to provide "proof of mailing" of the second notice to Appellees, mailed via first-class on August 27, 2009, as required by subsection 5860.602(e)(2). *Id.* at 12. Accordingly, the trial court declared the tax upset sale of the Property to be null and void. *Id.* at 13. Notably, *York,* the basis for the trial court's holding here, was decided months after the sale and the hearing in the instant case,[7] and no party here raised the subsection 602(e)(2) issue that the Commonwealth Court decided in *York.*

Appellant appealed to the Commonwealth Court, which affirmed. *Horton v. Washington County Tax Claim Bureau,* 44 A.3d 710 (Pa.Cmwlth.2012). Agreeing with the trial court, the Commonwealth Court relied on *York, supra,* to hold that the "proof of mailing" requirement set forth in subsection 602(e)(2) can be satisfied **only** with a USPS Certificate of Mailing, also known as USPS Form 3817. *Id.* at 714. Although the Bureau had submitted a United States Postal Service Consolidated Postage Statement with an attachment delineating to whom mailings had been sent on August 27, 2009, as well as the actual envelopes sent to both Appellees and returned with USPS's official stamp, the Bureau had not obtained a USPS Certificate of Mailing and thus, pursuant to *York's* holding, had failed to satisfy the strict notice requirement set forth in subsection 602(e)(2). *Id.* at 714–15.[8]

7. The tax upset sale and the hearing in the instant case were conducted, respectively, on September 23, 2009, and April 22, 2010. *York* was decided on September 1, 2010.

8. Appellant raised two issues before the Commonwealth Court: (1) the trial court had erred by concluding that the Bureau had failed to provide "proof of mailing" as required by subsection 602(e)(2), as discussed in the text, *supra;* and (2) the trial court had erred by concluding that the Bureau had not conducted a reasonable investigation to discover Appellees' whereabouts. The Commonwealth Court addressed only the first issue, concluding that *York, supra,* controlled the outcome of the case and also determining that the trial court's discussion of the second issue was *dicta. Horton,* 44 A.3d at 715 n. 6. In its opinion, the trial court opined that it "is hard pressed to find that

Appellant sought allowance of appeal from this Court, which we granted. The sole issue presented for our review is as follows:

Whether the Commonwealth Court erred in affirming the trial court's decision to set aside the upset tax sale on the basis that the bureau failed to provide certificates of mailing under 72 P.S. § 5860.602(E)(2) where the trial court made an express finding that the bureau mailed each taxpayer a notice of tax sale on August 27, 2009 by first class mail, and the trial court's finding is supported by substantial, undisputed evidence?

*Horton v. Washington County Tax Claim Bureau, Petition of Lewis*, 618 Pa. 170, 55 A.3d 1054 (2012).

■ Pursuant to 72 P.S. § 5860.602 ("Notice of sale"), a tax claim bureau is required to take several steps to attempt to provide notice to a property owner before conducting a tax upset sale due to a delinquency in payment of taxes on the property. The notice provisions of the statute "must be strictly complied with in order to guard against the deprivation of property without due process of law." *Krumbine v. Lebanon County Tax Claim Bureau*, 541 Pa. 384, 663 A.2d 158, 162 (1995) (citation omitted).

Section 602 specifically requires the following types of notice. At least thirty days prior to a scheduled tax upset sale, the Bureau must give notice of the scheduled sale by publication in two local newspapers and a legal journal. 72 P.S. § 5860.602(a). Also, at least thirty days prior to a scheduled sale, the Bureau must give notice by "United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner." 72 P.S. § 5860.602(e)(1). At least

---

the Bureau conducted a reasonable investigation" to determine Appellees' whereabouts and notify them, as required pursuant to 72 P.S. § 5860.607a. Trial Court Opinion at 12. The trial court specifically cited the Bureau's failure to conduct an internet search of the Property, but also stated that the "issue of whether or not an address internet search is required under 'reasonable' efforts shall not be decided in the case *sub judice*." *Id.* at 13. We agree with the Commonwealth Court's determination that the trial court's discussion of the subsection 607a "reasonable investigation" issue was *dicta*. *See Horton, supra* at 715 n. 6.

ten days prior to the scheduled sale, the property must be posted. 72 P.S. § 5860.602(e)(3). In the instant case, there is no dispute that these three requirements (the publication notice, the certified mail notice, and the posted notice) were all satisfied. *Horton, supra* at 713; Trial Court Opinion at 11–12.

The dispute here concerns another statutory requirement, to wit, 72 P.S. § 5860.602(e)(2), which mandates the mailing of a **second** notice if a return receipt is not received from each owner in response to the first, certified mail notice. Subsection 602(e)(2) provides, in relevant part, as follows:

> If return receipt is not received from each owner [in response to the certified mail notice required under subsection 602(e)(1), *supra*], then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by **United States first class mail,** *proof of mailing,* at his last known post office address . . . .

72 P.S. § 5860.602(e)(2) (emphasis added).

The issue presented here requires us to interpret the phrase "proof of mailing" in subsection 602(e)(2), an issue that the Commonwealth Court addressed in *York, supra.* In *York,* fifteen days prior to a tax upset sale, the tax bureau sent a second notice to the property owner via first-class mail, as required by subsection 602(e)(2). When the tax bureau did not receive a timely response, it proceeded with the tax upset sale. The property owner, who had not received the first-class notice until after the sale of his property had been accomplished, challenged the sale. Before the trial court, as evidence of the second notice mailed via first-class pursuant to subsection 602(e)(2), the tax bureau proffered an internal office document indicating, in the supervisor's handwriting, the date that the notice was sent. *York, supra* at 766–67. Noting that the tax bureau has the burden of proving compliance with all applicable notice provisions, the Commonwealth Court relied on the plain language of the statute to hold that the tax bureau had not established "proof of mailing" as required by subsection 602(e)(2). *Id.* at 768–69. The Commonwealth Court found it "evident that 'proof of mailing' in [sub]section

602(e)(2) refers to a document obtained from the USPS." *Id.* at 769. The rationale behind the court's determination was that all the other types of mailing specified in Section 602 are USPS services. Therefore, particularly since "proof of mailing" immediately follows "United States first class mail" in the statutory text, there was "no reason to believe that the legislature was referring to anything other than a USPS form" in subsection 602(e)(2). *Id.*

With regard to what specific USPS form was statutorily mandated, the Commonwealth Court looked to the USPS official website,[9] from which the court determined that "the only 'Proof of Mailing' for 'First–Class Mail' is a 'Certificate of Mailing,' " also known as USPS Form 3817. *Id.* at 769–770. The Commonwealth Court then held as follows:

[A]fter reviewing the text of section 602(e) in its entirety, as well as the types of mailing services available through the USPS, we are compelled to conclude that 'proof of mailing' refers only to a USPS certificate of mailing.

*Id.* at 770.[10]

Because the tax bureau in *York* had not proffered a Certificate of Mailing to establish "proof of mailing," the Commonwealth Court held that the bureau had failed to prove compliance with the subsection 602(e)(2) notice provision, and accordingly affirmed the order of the trial court vacating the tax upset sale. *Id.* at 771.

In the case presently before us, both the Commonwealth Court and the trial court relied upon *York* to conclude that the Bureau had not satisfied subsection 602(e)(2)'s "proof of mailing" requirement because it had not obtained and proffered a Certificate of Mailing from USPS. *Horton, supra* at 714–15. Accordingly, as in *York,* the Commonwealth Court affirmed

9. The Commonwealth Court cited *Figueroa v. Pennsylvania Board of Probation and Parole,* 900 A.2d 949, 950 n. 1 (Pa.Cmwlth.2006), for the proposition that the court may take judicial notice of information provided on a website. *York, supra* at 770 n. 10.

10. The Commonwealth Court also noted the need for statewide uniformity in proof of mailing, and determined that it was not an onerous burden to require the county tax bureaus to purchase a Certificate of Mailing at an additional cost of $1.15. *York, supra* at 770.

the order of the trial court setting aside the tax upset sale. *Horton, supra* at 714–15.

■■■ Because the interpretation of the statutory phrase "proof of mailing" presents a pure question of law, our standard of review is *de novo* and our scope of review is plenary. *Newman Development Group of Pottstown, LLC v. Genuardi's Family Markets, Inc.*, 617 Pa. 265, 52 A.3d 1233, 1239 (2012); *Dechert LLP v. Commonwealth of Pennsylvania*, 606 Pa. 334, 998 A.2d 575, 579 (2010). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). The best indicator of the legislature's intent is the statute's plain language. *Dechert, supra.* "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

■ From our review of Section 602(e), we must conclude that the Commonwealth Court's determination that "proof of mailing" can be satisfied **only** via proffer of a Certificate of Mailing, USPS Form 3817, does not reflect the intention of the legislature as revealed by the plain text of the statute.

Preliminarily, we express our agreement with the Commonwealth Court that, in several instances, the types of mailings expressly delineated in Section 602(e) are specific USPS terms specifying specific USPS services, which are explained and defined on the USPS website. *See York, supra* at 769 & n. 8 and n. 9; *https://www.usps.com/send.* This is easily visualized on a page from the USPS website that describes first-class mail and the extra services available with that class of mail:

**First–Class Mail**

First–Class Mail® is a fast and affordable service for envelopes and packages weighing up to 13 oz. Delivery is in 3 days or less. It's perfect for personal correspondence, bills, and light merchandise.

\*　　\*　　\*　　\*　　\*　　\*

**• Extra Services Rules & Restrictions**

**You can add the following options to all First–Class Mail® (except for postcards) to . . .**

**Insure the contents.**

*Insurance* coverage up to $5,000.

*Registered Mail*™ for loss or damage up to $25,000.

**Get delivery information.**

*USPS Tracking*™ to see tracking updates. . . .

*Signature Confirmation*™ [ ] to see when it was delivered. . . .

**Get proof of mailing.**

**Certificate of Mailing** as a way of proving the date you sent it.

**Get proof of mailing and delivery information.**

*Certified Mail*™ See when it was delivered or delivery was attempted. Requires the signature of the recipient.

**Get proof of delivery.**

*Return Receipt* with proof of delivery sent by email or postcard showing the recipient's signature.

**Get only authorized recipients to sign for the delivery.**

*Restricted Delivery* to specify who is allowed to sign for the delivery.

**Get your customers to pay for merchandise.**

**Collect on Delivery (COD)** Recipient pays for merchandise and shipping when they receive the package.

*https://www.usps.com/send/first-class.htm* (emphasis in original).

Similarly, in another location on the USPS website, entitled "Mail with Extra Services," thirteen services offered by the USPS are listed, defined, and priced. Specifically, the extra services, listed using terms specifically chosen by USPS, are as follows: Insurance*, Registered Mail™, USPS Tracking™, Signature Confirmation™, Certificate of Mailing, Certified Mail®, Return Receipt, Return Receipt for Merchandise, Restricted Delivery, Collect on Delivery (COD), Special Handling, Adult Signature Required, and Adult Signature Restricted Delivery. *See https://www.usps.com/send/insurance-*

*and-extra-services.htm.* "Certificate of Mailing" is defined as follows: "Have evidence that you sent the item when you say you did. This official record shows the date your mail was accepted. Certificates of mailing furnish evidence of mailing only." *Id.* A footnote to the definition clarifies that a Certificate of Mailing refers only to Form 3817 or Form 3877. *Id.*

Thus, as set forth on the USPS website, First–Class Mail, Certified Mail, Restricted Delivery, and Return Receipt, *inter alia,* are specific USPS terms for specifically defined USPS service options. These terms are used in subsection 602(e)(1) ("United States certified mail, restricted delivery, return receipt requested") or subsection 602(e)(2) ("United States first class mail"). As the Commonwealth Court determined, it is clear from the statutory text that the legislature intended these terms to be interpreted pursuant to USPS definitions.

However, "proof of mailing," the statutory phrase at issue here, is not a USPS term specifying a particular USPS service option. Rather, as illustrated above by the USPS website pages, the specific USPS term for the service option designed to provide evidence of the date that an item was mailed is "Certificate of Mailing." We cannot conclude that the General Assembly's failure to use the USPS term "Certificate of Mailing" in the statutory text is irrelevant or insignificant. Recognizing that the legislature chose to use the USPS terms first class mail, certified mail, restricted delivery, and return receipt in Section 602(e), we must conclude that, if the legislature had intended to **mandate** the proffer of a Certificate of Mailing in order to establish proof of mailing, then the legislature would have so specified by use of that specific USPS term in subsection 602(e)(2). Thus, we hold that the Commonwealth Court erred by promulgating a *per se* rule that subsection 602(e)(2)'s requirement for "proof of mailing" could be satisfied only and exclusively by the proffer of a Certificate of Mailing, USPS Form 3817.

Here, the Bureau proffered other USPS documents as "proof of mailing" pursuant to subsection 602(e)(2). First, the Bureau proffered a "United States Postal Service Consolidated Postage Statement—First–Class Mail & Priority Mail"

(hereinafter "USPS Consolidated Postage Statement"), signed by a USPS employee, bearing a USPS stamp, and showing a mailing date of August 27, 2009, for a total of 2,913 pieces. This document was accompanied by an attachment containing a list of several persons, with their addresses, to whom second notice mailings were sent; Jerry W. Horton and Susan W. Horton, at the Property's address, are both on the list.[11] Second, and more importantly, the Bureau proffered the actual envelopes sent via first-class mail to Jerry W. Horton and Susan W. Horton, respectively, and returned to the Bureau on or about September 10, 2009, with the following USPS notation:

RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD.

Thus, although the Bureau did not obtain a Certificate of Mailing, it did proffer other documents **from the USPS** as evidence to establish "proof of mailing." We hold that these USPS documents satisfy the statutory mandate for "proof of mailing" in subsection 602(e)(2).

In sum, we vacate the Commonwealth Court's order in the instant case; we disapprove of *York's* holding to the extent that it mandated a Certificate of Mailing, USPS Form 3718, to the exclusion of any other USPS documentation,[12] in order to establish "proof of mailing" under 72 P.S. § 5860.602(e)(2); and we remand to the trial court for consideration of the other issues raised in Appellees' petition.

11. The "Run Date" of the attachment is provided at the top of the page as August 20, 2009. This date matches the date on the line of the USPS Consolidated Postage Statement where one is instructed to "Enter Date of Address Matching and Coding," which is distinct from the mailing date provided on another line of the USPS Consolidated Postage Statement.

12. We recognize that a Certificate of Mailing, USPS Form 3817, may in general be the most consistently reliable form of evidence of the date of mailing. However, under the facts of this case, where the Bureau proffered the **actual envelopes** mailed to Appellees and returned by USPS to the Bureau as undeliverable, we cannot conclude that the Bureau failed to establish "proof of mailing" merely because it did not also proffer a Certificate of Mailing.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices SAYLOR and TODD join the opinion.

Justice EAKIN files a concurring opinion.

Justice BAER files a dissenting opinion.

Justice EAKIN, concurring.

Prospectively, I believe "proof of mailing" is limited to documents (receipts, certificates, etc.) issued by the post office, showing mailing of the notice to the property owner by first class mail, to his/her address, on a specific date. Given the difficulties in defining "proof of mailing," and the somewhat unique facts of this case, however, I would not apply this stricter definition of the term retroactively. Thus, I join the reasoning of the dissent, but the result of the majority.

I cannot join the majority's broad interpretation of "proof of mailing," which, in my opinion, does not comport with established practice and opens the door to unwarranted results. An envelope alone is not what the statute calls for. I agree with Justice Baer, that "proof of mailing" refers to postal service acknowledgement the matter was placed in the mail. I agree this proof is not limited to a denominated USPS Form, but encompasses whatever document the postal service provides to document the mailing. These services record the pertinent information and provide documentary evidence the statutory requirements were met. What form the postal service uses as a receipt seems immaterial and is not denominated by the statute as a required element. A review of the relevant provisions also suggests the legislature, in connection with the second notice under § 602(e)(2), did not require any specific mailing service, but instead, any of the services that provide documentation of the information outlined above. *Compare* 72 P.S. § 5860.602(e)(1) (delineating specific mailing services), *with id.,* § 602(e)(2) (requiring only "proof of mailing").

Therefore, I do not believe the rules permit "proof of mailing" to be established by an envelope, which purportedly

contained the required § 602(e)(2) notice, returned to the sender as undeliverable. The pertinent phrase in the statute is not talking about burden of proof—indeed, there must be proof of all the prerequisites to sale, not just this one—and does not say any means of proof that mailing occurred is sufficient. It requires "first class mail, proof of mailing," and while this language does not quite rise to a clear term of art, the statute is manifestly referring to evidence from the postal service. Putting the "proof of mailing" directly adjacent to the means of service (the postal service) certainly contemplates a document from the postal service, by whatever form number or title it chooses to designate it, which vouches for the mailing. Proof by non-postal service evidence is statutorily insufficient.

Justice BAER, dissenting.

Section 602 of the Real Estate Tax Sale Law,[1] entitled "Notice of Sale," provides extremely detailed and explicit instructions that taxing bureaus must follow to execute the tax sale of a delinquent property. First, all of the notices published and sent to advise delinquent taxpayers of the potential tax sale of their property must: (1) be printed within a conspicuous text box; (2) in at least ten-point font; and (3) contain the explicit warning:

YOUR PROPERTY IS ABOUT TO BE SOLD WITHOUT YOUR CONSENT FOR DELINQUENT TAXES. YOUR PROPERTY MAY BE SOLD FOR A SMALL FRACTION OF ITS FAIR MARKET VALUE. IF YOU HAVE ANY QUESTIONS AS TO WHAT YOU MUST DO IN ORDER TO SAVE YOUR PROPERTY, PLEASE CALL YOUR ATTORNEY, THE TAX CLAIM BUREAU AT THE FOLLOWING TELEPHONE NUMBER _____, OR THE COUNTY LAWYER REFERRAL SERVICE.

72 P.S. § 5860.602(g).

Subsection (a) of Section 602 further delineates that taxing bureaus must at least thirty days before a scheduled tax sale

---

1. 72 P.S. § 5860.602; Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–5860.803.

place the above-quoted notice in two newspapers of general circulation within the county, as well as in a legal journal if one exists within that county, which sets forth in addition to the notice: "(1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, [and] (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner." 72 P.S. § 5860.602(a).

Concomitant with the posting of the notice in two newspapers of general circulation and a legal journal, if one is available, the taxing bureau must, "by United States certified mail, restricted delivery, return receipt requested, postage prepaid" notify the owners of the delinquent property of the impending sale with the aforementioned notice. *Id.* § 5860.602(e)(1). Should the taxing bureau not receive a return receipt from the delinquent property owner, "then, at least ten days before the date of the sale, similar notice of the sale shall be given ... by United States first class mail, *proof of mailing*, at his last known post office address by virtue of the knowledge and information possessed by the bureau...." *Id.* § 5860.602(e)(2) (emphasis added). What the General Assembly meant by "proof of mailing" is the only issue before this Court.

Despite the specific, detailed, and particular instructions given by the legislature to county taxing bureaus for the publication and sending of tax sale notices, the Majority in the instant appeal countenances a scheme where a taxing bureau can, upon a challenge by the property owner contending notice was not provided pursuant to Section 602(e)(2), simply bring to court any documents it may have to "prove" that mailing of the second, subsection (e)(2) notice actually occurred. In my respectful view, when the legislature mandated that taxing bureaus send the (e)(2) notice by "first class mail, proof of mailing," it intended for the first class mail to be sent accompanied with a USPS document that constitutes "proof of mailing," and did not intend to countenance anything else. My reasoning follows.

Prior to 1986, Section 602(e)(2) actually mandated that the ten-day notice be sent via "United States certified mail." When the General Assembly made vast revisions to the Real Estate Tax Sale Law in 1986, one such change was revising "certified mail" to "first class mail, proof of mailing." Contrary to the reasoning of the Majority, the 1986 revision did not change the (e)(2) notice from certified mail to first class mail without more, which would have permitted taxing bureaus to put a stamp on an envelope containing the requisite notice, and then, when challenged, to proffer any generic evidence that it mailed the envelope.[2] Rather, the General Assembly specified that notice had to be sent by first class

2. Indeed, in this case, the taxing bureau submitted to the court a self-prepared "United States Postal Service Consolidated Postage Statement—First Class Mail & Priority Mail" and the envelope that allegedly contained the (e)(2) notice to Appellees as its "proof of mailing." Attached to the Consolidated Postage Statement was a ledger apparently listing the names and addresses of persons to whom the taxing bureau sent (e)(2) notices. Respectfully, these documents do not comply with subsection (e)(2) for various reasons.

First, while the Majority finds of primary importance that the taxing bureau "proffered the actual envelopes sent via first-class mail" to the property owners, Maj. Op. at 127, 81 A.3d at 891, respectfully, this exemplifies the problem with the Majority's holding. While here, there does not appear to be a dispute that the taxing bureau produced the actual envelopes sent to the property owners, in the thousands of tax sales that occur in the Commonwealth annually, the Majority's holding essentially gives license to taxing authorities to bring whatever proof they can find into court, thus placing judges, who must sit as fact-finders in any challenges raised, in the position of determining credibility and weight of evidence. Such cannot be what the General Assembly envisioned when codifying a uniform system of providing notice in the statutory language under scrutiny.

In the same vein, the Consolidated Postage Statement by itself does nothing to show "proof of mailing." The statement was no more than a cover sheet for bulk mailings prepared by the mailer, not the USPS, that sets forth the number of parcels and the postage cost for the bulk mailing. While this cover sheet is then later signed and stamped by a USPS employee, that signature only verifies that the cost of postage submitted covers the costs of mailing; it does nothing to prove to whom anything was mailed. Finally, the "attachment" of intended recipients of (e)(2) notices, while also prepared by the taxing bureau, does not seem to be verified in the same manner as the Consolidated Postage Statement, and is therefore no more "proof of mailing" than anything else submitted by the taxing bureau to the court. *See* Reproduced Record 289a–296a.

mail, which must then be proven through a "proof of mailing" form provided by the USPS.

Looking first at the subsection (e)(1) notice provisions provides support for this conclusion. Subsection (e)(1) states that the initial, thirty-day notice must be sent "by United States certified mail, restricted delivery, return receipt requested, postage prepaid." All of these terms—certified mail, restricted delivery, return receipt requested, and postage prepaid—are types of mailings and services added to the mailing; they are not burdens of evidentiary proof that may be provided by a mailer. Indeed, they are terms contained and defined within the Code of Federal Regulations, as incorporated by the United States Postal Service, Domestic Mail Manual. *See* 39 C.F.R. § 111.1.

First class mail, as defined by the Domestic Mail Manual, is "any mailable item, including postcards, letters, flats, and small packages" that contains "personal information . . . specific to the addressee," or any "mail containing handwritten or typewritten material." *Domestic Mail Manual,* Part 133, §§ 3.1, 3.3, & 3.4. First class mail is then eligible for any number of "extra services, including: registered mail, certified mail, certificate of mailing, collection on delivery, USPS tracking, insured mail, return receipt for merchandise, restricted delivery, signature confirmation, and special handling." *Id.* Part 133, § 2.2.5.

None of these extra services are entitled "proof of mailing," as delineated within subsection (e)(2). However, the Domestic Mail Manual does provide for a "mailing receipt" as part of several of the extra services listed above. As defined in the Manual, a mailing receipt shows "the time and date of mailing" and is provided to the mailer at the time of mailing. *See, e.g., id.* Part 313 § 4.1. Mailing receipts are available for first class mailings that are accompanied by the following extra services: registered mail, certified mail, insured mail, return receipt for merchandise, USPS tracking (when purchased at a post office), signature confirmation (when purchased at a post office), and collect on delivery. *Id.* Part 503, §§ 1.2.1, 2.2.1, 3.4.1(c), 9.2.1, 10.2.5(a), 11.2.4(a). Similarly, the extra service

of a certificate of mailing "is available only at the time of mailing and provides evidence that mail has been presented to the USPS for mailing." *Id.* Part 503, § 4.2.1.

In my respectful view, these mailing receipts and certificates, which are provided by the USPS to the mailer at the time of sending first class mail, provide the uniform scheme of "proof of mailing" as anticipated by the General Assembly and Section 602(e)(2). Indeed, all of the forms and labels associated with these extra services uniformly designate: (1) the receiver of the mail and his address; (2) the associated postage or cost; and (3) a postmark, depicting the date the USPS took custody of the first class mailing. *See, e.g.,* USPS Form 3817 (certificate of mailing); USPS Form 3800 (certified mail); and Form 3813 (insured mail). Put differently, these all satisfy the requirement of a notice sent "United States first class mail, proof of mailing," [3] and ensure that each of the sixty-seven county taxing bureaus in the Commonwealth follow a discrete, predictable procedure for obtaining "proof of mailing." Thus, the legislature expanded the type of extra service mailing a taxing bureau may use to accomplish the sending of the (e)(2) notice from solely certified mail to these other USPS services. It did not, however, negate the necessity of taxing bureaus using some type of USPS proof of mailing when providing the (e)(2) notice.

Accordingly, pursuant to Section 602(e)(2), the General Assembly mandated the ten-day notices to be sent via first class mail, with one of the special services available to first class mail that demonstrate proof of mailing, *i.e.,* a mailing receipt or certificate of mailing. I would therefore find that the

3. The USPS's website describes all of the extra services enumerated in the Domestic Mail Manual in plain English. To that end, the website informs customers that they may obtain "proof of mailing" by purchasing either certified mail or certificates of mailing. While I rely upon the actual federal regulation as contained within the Domestic Mail Manual to arrive at my conclusion herein, I would, at the very least, restrict the meaning of "proof of mailing" as contained within Section 602(e)(2) to these two services. Related thereto, I respectfully note that the Majority, at 122, 81 A.3d at 888 of its opinion, quotes these plain English provisions from the USPS website, and then inexplicably ignores this very language in permitting self-made ledgers and envelopes to be brought into court as "proof of mailing."

Washington County Tax Bureau did not comply with the plain language of Section 602(e)(2) in this case and affirm the decisions of the lower courts that declared the upset tax sale to be null and void. As the Majority holds otherwise, I respectfully dissent.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.