### The ALLEGHENY WEST CIVIC COUNCIL, INC. and John DeSantis, Appellants

v.

### ZONING BOARD OF ADJUSTMENT OF CITY OF PITTSBURGH and City of Pittsburgh, Griffin Family Limited Partnership, and All Stop Parking, LLC.

Commonwealth Court of Pennsylvania.

Argued April 22, 2014.

Decided June 18, 2014.

Joel P. Aaronson, Pittsburgh, for appellants.

David J. Montgomery, Pittsburgh, for appellees Griffin Family Limited Partnership and All Stop Parking, LLC.

BEFORE: RENÉE COHN JUBELIRER, Judge, and MARY HANNAH LEAVITT, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

The Allegheny West Civic Council, Inc.[1] and John DeSantis (collectively, Objectors) appeal an order of the Court of Common Pleas of Allegheny County (trial court) that affirmed a decision of the Zoning Board of Adjustment of the City of Pittsburgh. Specifically, the Zoning Board held that the North Side Commercial Parking Area Overlay District did not prohibit a plan by Griffin Family Limited Partnership and All Stop Parking, LLC (collectively, Landowners) to use an existing parking lot for special events parking. Accordingly, Landowners did not need a variance to pursue their plan. Objectors contend that the trial court erred because the only issue raised in Landowners' appeal was whether they were entitled to a variance. We affirm the trial court.

Griffin Family Limited Partnership owns and operates Blackwood Supply Co. Inc., a wholesale building supply store,

located at 1231 Western Avenue in Pittsburgh. The property consists of a warehouse, an office and a 52–space outdoor parking lot. The property is located in the North Side Commercial Parking Area Overlay District (Overlay District). Blackwood entered into an agreement with All Stop Parking to use its parking lot for parking on nights and weekends, when the business is closed, for events at Heinz Field. To that end, Landowners filed an occupancy permit application with the Zoning Administrator.

The Zoning Administrator denied the permit for the stated reason that commercial event parking was not permitted in the Overlay District by reason of Section 907.03.B of the Zoning Code.[2] The Zoning Administrator advised Landowners that they needed a variance to pursue their plan. In accordance with the Zoning Administrator's instruction, Landowners appealed the Zoning Administrator's decision and requested a variance.

At the hearing before the Zoning Board, Landowners presented evidence about the existing parking lot and how it is used in Blackwood's business. Dan Griffin, a Blackwood shareholder, offered his view that demand for parking at stadium events is great and results in excessive on-street parking. He believed that permitting more parking in the Overlay District would relieve congestion caused by stadium events and would generate additional tax revenue for the City.

DeSantis, an Objector in his own right and as a representative of the Allegheny West Civic Council, testified in opposition to Landowners' plan. He opined that the purpose of the Overlay District was to eliminate stadium event parking in North

1. The Allegheny West Civic Council is a neighborhood organization representing the interests of the "Allegheny West" neighborhood of the City of Pittsburgh.

2. ZONING CODE OF THE CITY OF PITTSBURGH, PENNSYLVANIA (1999).

Side neighborhoods and encourage those attending events at the stadium to park in downtown garages built by the taxpayers. He contended that a variance for event parking would directly violate Section 907.03.B of the Zoning Code. Section 907.03 states as follows:

907.03. NSCPO, North Side Commercial Parking Area Overlay District.

907.03.A Intent

The intent of the NSCPO District is to prohibit the installation of commercial parking areas as defined under Sec. 911.02 [3] on vacant lots.

907.03.B Application

When an Occupancy Permit Application is filed for zoning approval of a commercial parking area on property located within a NSCPO District, the Zoning Administrator shall disapprove the application.

ZONING CODE, ARTICLE III, § 907.03.

The Zoning Board rejected Objectors' construction of Section 907.3.B and held that Landowners did not need a variance. It explained that Section 907.03.B directs the Zoning Administrator to deny occupancy permits for commercial parking but this directive must be read in conjunction with Section 907.03.A, which states that the purpose of the Overlay District is to prohibit the "installation" of commercial parking areas on "vacant" lots. In other words, Section 907.03 was not intended to

address or in any way proscribe stadium event parking in existing parking lots located in the Overlay District. Accordingly, Landowners did not need a variance from Section 907.03.B to operate commercial event parking on their existing and actively used parking lot, which is accessory to Blackwood's business use.

▬ Objectors appealed to the trial court. Noting that the Zoning Board's job was, *inter alia,* to interpret the Zoning Code, the trial court concluded that the Zoning Board's interpretation of Section 907.03 of the Zoning Code was correct. Accordingly, it affirmed. Objectors appealed to this Court.[4]

On appeal, Objectors raise a number of issues.[5] First, they argue that Landowners waived the issue that a variance was not needed under the Zoning Code and, thus, the Zoning Board erred in so holding. Second, they argue that the Zoning Board erred in its interpretation of the Zoning Code. Third, they argue that the Zoning Board erred because Landowners have not submitted a plan for their events parking lot.

▬ We begin with Objectors' assertion that the Zoning Board should never have even considered Section 907.03.A of the Zoning Code when Landowners did not raise that provision in their appeal. Landowners' application requested a variance and that was the only issue before the

---

3. Section 911.02 of the Zoning Code is a use table. It defines commercial parking as "an area used or intended to be used for the off-street parking of operable motor vehicles on a temporary basis, other than as accessory parking to a principal use, and excluding parking structures."

4. Where the trial court takes no additional evidence, our scope of review is limited to determining whether the zoning board abused its discretion or committed an error of law. *Blancett–Maddock v. City of Pittsburgh Zoning*

*Board of Adjustment,* 6 A.3d 595, 600 n. 4 (Pa.Cmwlth.2010). An abuse of discretion occurs where the zoning board's findings are not supported by substantial evidence of record. *Id.*

5. For purposes of clarity, we have restated Objectors' six issues as three. Objectors argue that Landowners did not prove hardship as is required for a variance. However, we do not address that issue because we conclude that a variance was not needed.

Zoning Board. Landowners respond that the Zoning Administrator directed them to seek a variance when he denied Landowners' permit application. In any case, the meaning of Section 907.03 of the Zoning Code was squarely before the Zoning Board because it was raised by Objectors.

In support of its position that the Zoning Board erred in reaching the meaning of Section 907.03.A, Objectors rely upon *Orange Stones Company v. Borough of Hamburg Zoning Hearing Board*, 991 A.2d 996 (Pa.Cmwlth.2010).[6] In *Orange Stones*, the landowner appealed the denial of a permit to build a rehabilitation center for drug users, which the zoning officer found to be a hospital, a use not permitted in the zoning district. Before the zoning board, the landowner produced evidence to show that the center was not a hospital. The zoning board found that the center was a hospital or, alternatively, a jail, which also was not a permitted use. The trial court affirmed the zoning board on the ground that the proposed center was a jail, a use not permitted in the zoning district.

■ On appeal to this Court, the landowner argued that the zoning board erred by raising an issue not identified by the zoning officer or by the parties to the hearing. We agreed. The landowner came to the hearing to present evidence on why the center was not a hospital. It had no advance warning that it had also to present evidence on why the center was not a jail. We explained that the Municipalities Planning Code (MPC)[7] gives the zoning board appellate jurisdiction over the zoning officer's decisions, who acts as a gate-keeper. Accordingly, the zoning board may clarify the issues, but it may not raise a new issue. *Orange Stones* is distinguishable.

■ First, we decided *Orange Stones* on the basis of Section 909.1(a)(3) of the MPC.[8] The MPC does not apply to second class cities, *i.e.*, the City of Pittsburgh. *Broussard v. Zoning Board of Adjustment of City of Pittsburgh*, 589 Pa. 71, 907 A.2d 494, 499 n. 7 (2006).

Second, *Orange Stones* turned on a factual question. The landowner in *Orange Stones* was deprived of its ability to present evidence relevant to whether its proposed center was a jail. Here, the

---

**6.** Objectors also cite *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of City and County of Philadelphia*, 682 A.2d 1 (Pa.Cmwlth.1996), but without explanation of its significance. In *SCRUB*, the trial court *sua sponte* raised the issue of the objector's standing to appeal. Finding the objector lacked standing, the trial court quashed the appeal. This Court reversed, explaining that the issue of standing was not raised before the zoning board, and it was not jurisdictional. As such, the trial court did not have authority to raise an issue not preserved.

**7.** Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

**8.** Section 909.1 was added by the Act of December 21, 1988, P.L. 1329. Section 909.1(a)(3) states:

 (a) The zoning hearing board shall have exclusive jurisdiction to hear and ren-

der final adjudications in the following matters:

 * * *

 (3) Appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application therefor, the issuance of any cease and desist order or the registration or refusal to register any nonconforming use, structure or lot.

53 P.S. § 10909.1(a)(3). Section 909.1 was added by the Act of December 21, 1988, P.L. 1329. We concluded that the General Assembly's intent in enacting the MPC was that where the zoning board has acted in its appellate jurisdiction, it may not raise an issue that was not before the zoning officer. *Orange Stones*, 991 A.2d at 998–99.

question is purely legal. The Zoning Administrator's action placed the meaning of Section 907.03.B before the Zoning Board. Indeed, DeSantis did as well. He repeatedly asserted that Section 907.03.B of the Zoning Code was intended to eliminate any commercial parking in the Overlay District, without exception.

Third, Objectors place far too much emphasis on the appeal form that was filled out by Landowners. They checked the box for "variance" from Section 907.03.B because they were advised to do so by the Zoning Administrator. Reproduced Record at 95a. The appeal form is not a pleading, but a government form, the purpose of which is to get a landowner's challenge to a decision of the Zoning Administrator on the Zoning Board agenda. *See, e.g., Reyes v. Workers' Compensation Appeal Board (AMTEC)*, 967 A.2d 1071, 1079 n. 8 (Pa.Cmwlth.2009) (noting that waiver rules applicable to pleadings filed in judicial proceedings do not apply in administrative proceedings).

The Zoning Board acted within its scope of authority in reversing the Zoning Administrator. That is the point of the hearing. Section 923.02.B of the Zoning Code grants the Zoning Board the following powers:

1. *To hear and decide appeals where it is alleged that there is error in any order, requirement, decision or determination made by the Zoning Administrator* or the Chief of the Bureau of Building Inspection in the administration of this Code, and, upon appeal, to interpret any provision of this Code where its meaning or application is in question;

2. To authorize upon appeal, in specific cases, variances from the terms of this Code in accordance with Sec. 922.09;

3. *To hear and decide, upon appeal from the grant or denial of zoning approval with respect to a specific application, issues of the validity of any provision of this Code;* and

4. To hear and decide special exceptions authorized by specific provisions of this Code, in accordance with Sec. 922.07 and other provisions of this Code that prescribe standards for the respective special exceptions authorized.

5. The Board, in conformity with this Code, may affirm or reverse or modify, wholly or partly, any order, requirement, decision or determination appealed, and may make such order as it finds to be proper, as if acting with all the powers of the officer from whom the appeal has been taken.

ZONING CODE, ARTICLE VII, § 923.02.B (emphasis added). On appeal, the Zoning Board stepped into the shoes of the Zoning Administrator with authority to exercise "all the powers of the officer from whom the appeal has been taken." ZONING CODE, ARTICLE VII, § 923.02.B.5. It acted *de novo* in holding that Landowners did not need a variance from Section 907.03.B, as had been decided by the Zoning Administrator.

██ In their second issue, Objectors argue that the Zoning Board erred in its interpretation of Section 907.03.B of the Zoning Code.[9] Objectors argue that the Zoning Board focused on Section 907.03.A when it should have focused exclusively on Section 907.03.B. Objectors claim that Sec-

---

**9.** Objectors argue that the Zoning Board did not give proper deference to the Zoning Administrator's interpretation of the Zoning Code. As stated above, the Zoning Board has the authority "upon appeal, to interpret any provision of this Code where its meaning or application is in question." ZONING CODE, ARTICLE VII, § 923.02.B.1. Its review is *de novo.*

tion 907.03.B unambiguously forbids the issuance of a permit for any commercial parking lot located in the Overlay District and, thus, is dispositive of Landowners' request for a permit.

■ The principles of statutory construction are generally followed when construing local ordinances. *Reaman v. Allentown Power Center, L.P.*, 74 A.3d 371, 374 (Pa.Cmwlth.2013). The basic principles are as follows:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921.

The Zoning Code prohibits "the installation of commercial parking areas ... on vacant lots." ZONING CODE, ARTICLE III, § 907.03.A. Landowners have no plans to "install" a new parking area on a vacant lot. They will use their existing parking lot. Objectors offer an interpretation of the Zoning Code that gives full weight to Section 907.03.B and none at all to Section 907.03.A. We hold that the Zoning Board correctly construed Section 907.03.B in context by reading it together with Section 907.03.A. These two provisions must be read together. 1 Pa.C.S. § 1921(a).

■ Finally, Objectors contend that the Zoning Board erred because Landowners did not submit a plan for their commercial parking lot, as required by the Zoning Code. Objectors have attached addenda to their brief setting forth site development and review plans required for the North Side Overlay District.

■ The Zoning Board dismissed Landowners' request for a variance because it concluded that a variance was not needed to operate a special event parking lot on an existing and active parking lot. The issue of a site plan was not raised before the Zoning Board or the trial court. Issues not raised before the trial court are waived on appeal to this Court. *Pennsylvania Bankers Association v. Pennsylvania Department of Banking*, 599 Pa. 496, 962 A.2d 609, 621 (2008). Whether Landowners need to submit a site plan is an issue not preserved and not before this Court.

For these reasons, we affirm the trial court's order.

### ORDER

AND NOW, this 18th day of June, 2014, the order of the Court of Common Pleas of Allegheny County dated July 9, 2013 is AFFIRMED.