# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Suzanne M. Ebbert,                          :
                 Appellant          :
                                  :
                v.                       :  No. 347 C.D. 2016
                                  :  Submitted:  August 5, 2016
Upper Saucon Township Zoning                :
Board, Upper Saucon Township,               :
Douglas and Carolyn Shoenberger             :

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE JULIA K. HEARTHWAY, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**               **FILED:  November 21, 2016**

         Suzanne M. Ebbert (Ebbert) appeals from an order of the Court of Common Pleas of Lehigh County (trial court), affirming an order of the Upper Saucon Township (Township) Zoning Hearing Board (Board), denying Ebbert a zoning permit.[1]  For the reasons discussed below, we reverse.

         Ebbert owns property consisting of 76 acres located at 4393 Limeport Pike, Coopersburg, Upper Saucon Township, Lehigh County, Pennsylvania 18036 (the Property).  On October 1, 2013, Ebbert applied for a zoning permit to build a 9,600-square-foot barn, six 864-square-foot permanent horse run-ins, and a related access road.  When Ebbert submitted her zoning permit application, the

---

[1] In addition to the Board's brief on the merits, the Township submitted a brief in support of the Board's decision.  Douglas and Carolyn Shoenberger, who objected to Ebbert's application for a zoning permit before the Board, did not participate on appeal to this Court.

Township's Zoning Officer advised her that the Township's Zoning Ordinance[2] (Zoning Ordinance) requires compliance with all local laws, including the Township's Subdivision and Land Development Ordinance[3] (SALDO). The Zoning Officer eventually denied Ebbert's zoning permit application on the basis that the SALDO required Township approval of a land development plan, which Ebbert had not submitted.

Ebbert appealed the denial to the Board, arguing that she did not need to submit a land development plan because farms are exempted from the definition of land development under the SALDO. The Township argued that the Board lacked the authority to decide whether the Property was exempt from the SALDO requirements and, instead, that the authority to interpret the SALDO rested with the Township Board of Supervisors. Ebbert argued that the Board had the authority to interpret the SALDO because the Zoning Officer's denial evidenced an incorrect interpretation of the SALDO. The Board agreed with the Township that it lacked jurisdiction to decide the appeal because the authority to interpret the SALDO rested with the Township Board of Supervisors. Accordingly, the Board denied Ebbert's appeal.

Ebbert appealed the decision of the Board to the trial court. Ebbert argued that the Board erred in denying her zoning permit because the SALDO excludes farms from the definition of land development and, if the Board has jurisdiction to determine whether a zoning permit is required, then it must have

---

[2] Ordinance No. 141, The Upper Saucon Township Zoning Ordinance of 2009 (June 2009).

[3] Ordinance No. 145, Subdivision and Land Development Ordinance (December 2011).

2

jurisdiction to decide all subsidiary issues, such as the SALDO's applicability. Alternatively, Ebbert argued, if the Board does not have jurisdiction over the SALDO issue, then the requirement for a zoning permit is void on its face, because it creates a requirement with no forum for relief. The trial court heard argument, but it took no additional evidence.

The trial court examined the provisions of the SALDO and the Zoning Ordinance and began by noting that Section 901.A.11 of the Zoning Ordinance requires a Zoning Officer to reject any application that "fails to comply with the provisions of this Ordinance and all pertinent local laws." The trial court concluded that the Board did not err in denying Ebbert's zoning permit application, reasoning that Ebbert had failed to comply with the provisions of the SALDO requiring submission and approval of a land development plan and, thus, did not comply with all pertinent local laws as required by the Zoning Ordinance. While the trial court did not decide whether Ebbert's property met the definition of a "farm" under the SALDO, it found that "the authority with jurisdiction over the SALDO would have to determine if [Ebbert] is exempt from the SALDO requirements" and that Ebbert erred in pursuing her zoning permit appeal with the Board.

Ebbert appealed the trial court's decision to this Court, arguing that the Board erred in determining that it did not have jurisdiction to interpret the SALDO. We reversed and remanded, reasoning that the Board was empowered to decide if the decision of the Zoning Officer was correct, and, because the Zoning Officer denied Ebbert's application based on the SALDO, the Board must be empowered to interpret the SALDO to determine if the Zoning Officer erred in

3

denying the permit. *See Ebbert v. Upper Saucon Twp. Zoning Hearing Bd.*, (Pa. Cmwlth., No. 1255 C.D. 2014, filed March 26, 2015) (*Ebbert I*).

On remand, the Board considered whether the Property was a farm and, thus, was entitled to be exempted from the land development plan requirement. The Board concluded that the Property was not a farm, because the Property did not contain a dwelling unit, *i.e.*, a farmhouse, and the definition of a "farm" in both the SALDO and the Township's Zoning Ordinance required the land to have a dwelling unit. Accordingly, the Board concluded that Ebbert failed to comply with the Township Ordinance and the Zoning Officer properly denied her zoning permit.

Ebbert again appealed to the trial court, arguing that the Board erred in determining that the Property was not considered a farm under the SALDO. The trial court affirmed the Board's order, noting that the definition of a farm under the SALDO does require that a dwelling unit be included on the Property and Ebbert admitted that the Property does not have a dwelling unit.

On appeal to this Court,[4] Ebbert raises two issues: (1) whether the Board violated the scope of remand from this Court by determining whether a dwelling unit was necessary under the definition of a farm set forth in the SALDO and the Zoning Ordinance and; (2) whether the Board erred in determining that the

---

[4] "When no additional evidence is taken following the determination of a zoning hearing board, this Court's scope of review is limited to determining whether the zoning board committed an error of law or a manifest abuse of discretion in rendering its decision." *Pennsy Supply, Inc. v. Zoning Hearing Bd. of Dorrance Twp.*, 987 A.2d 1243, 1248 n.5 (Pa. Cmwlth. 2009), *appeal denied*, 4 A.3d 1056 (Pa. 2010). For questions of law, our scope of review is plenary. *Harman v. Forest Cnty. Conservation Dist.*, 950 A.2d 1117, 1118 n.2 (Pa. Cmwlth. 2008).

4

Property was not a farm under the definition set forth in the SALDO and the Zoning Ordinance.

Resolving the first question, we conclude that the Board did not exceed the scope of our remand in determining whether a dwelling unit was necessary under the definition set forth in the SALDO. Ebbert argues that the Board decided issues outside the scope of our remand and did so in bad faith. Ebbert further argues that the Board's actions in bad faith entitle her to an award of counsel fees. In support of her argument that the Board exceeded the scope of our remand, Ebbert quotes language from our decision in *Ebbert I*:

> Because we are reversing on the basis of the jurisdictional question, we need not decide whether the Board erred in denying Ebbert's permit. We note, however, that it was not until oral argument at this Court that the Township expressed a concern that the Property was not actually an existing farm and that the proposed barn may not be used for an agricultural purpose.

*Ebbert I,* at 8. Notably, however, Ebbert omits the following language from that opinion:

> The Board and the trial court both concentrated on the jurisdictional issue, and, *as a result, the record contains no evidence regarding the current and proposed use of the land and barn*.
>
> For the reasons stated above, we reverse the order of the trial court and remand the matter to the trial court with instruction that it further remand the matter to the Board *for the creation of a record and a decision on the merits*.

*Id.* (emphasis added). Clearly, our instruction to the Board was to create a record and determine whether Ebbert's proposed land development actually meets the definition of a "farm" under the SALDO. We struggle to hypothecate how the Board could determine whether the Property was a farm for purposes of land

5

development and zoning without examining the definition of a "farm" in both the SALDO and Zoning Ordinance. Accordingly, the Board did not exceed the scope of our remand.[5]

Ebbert argues that the Board's decision was clearly erroneous because it interpreted the definition of a "farm" in both the SALDO and the Zoning Ordinance to require that a parcel of land include a dwelling unit in order to be defined as a farm. In its decision denying Ebbert's application for a zoning permit, the Board reasoned:

> [In] looking at the definition of farm, as set forth [in the SALDO and Zoning Ordinance,] said use required a residence. By [Ebbert's] own testimony, no residence was being constructed on this [P]roperty, nor was there any residence on the [P]roperty at this time. Therefore, [Ebbert's] use does not qualify under the definition of farm in either ordinance.

A zoning hearing board is the entity charged with the interpretation and application of the zoning ordinance. It is well-settled that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference from a reviewing court. *Smith v. Zoning Hearing Bd. of Huntingdon Borough*, 734 A.2d 55, 57 (Pa. Cmwlth.), *appeal denied*, 747 A.2d 904 (Pa. 1999). The basis for the judicial deference is the knowledge and expertise that a zoning hearing board possesses to interpret the ordinance that it is charged with administering. *Id.* A zoning hearing board's interpretation, however, is not controlling where it "is clearly erroneous or inconsistent with the regulation" or

---

[5] Because the Board did not exceed the scope of our remand, we find that the Board did not act in bad faith as argued by Ebbert. Accordingly, her request for counsel fees is denied.

"the regulation, itself, is inconsistent with the underlying legislative scheme." *See Pa. State Police, Bureau of Liquor Control Enforcement v. Benny Enters., Inc.*, 669 A.2d 1018, 1021 (Pa. Cmwlth. 1995), *appeal denied*, 681 A.2d 1344 (Pa. 1996). Where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. *Keener v. Rapho Twp. Zoning Hearing Bd., Lancaster Cnty.*, 79 A.3d 1205, 1214 (Pa. Cmwlth. 2013).

In order to obtain a zoning permit to construct the proposed building, Ebbert is required to submit a land development plan for approval by the Board unless the proposed land development falls within certain exemptions set forth in the SALDO's definition of land development. The SALDO defines land development as:

> Any of the following activities:
>
> 1. The improvement of one (1) lot or two (2) or more contiguous lots, tracts, or parcels of land for any purpose involving:
>
> > a. A group of two (2) or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure;
> > . . .
>
> 3. The following activities are excluded from this term:
> . . .
>
> > b. The addition of an accessory building or use, including farm buildings, on a lot or lots subordinate to an existing principal residence or farm; . . . .

(SALDO § 108.C.)

Ebbert argues that the Property and the proposed building fall within the exemption for an accessory building subordinate to an existing farm. The

7

Board found that the Property failed to meet the definition of a farm under the SALDO, and, thus, her proposed building cannot be exempted as an accessory building to a farm. Both the SALDO and the Zoning Ordinance define a farm as follows:

> A parcel of land that is used for one (1) or more agricultural operations, including but not necessarily limited to the raising of agricultural products, livestock, poultry, or the production of dairy products. A "farm" shall be understood to include a dwelling unit as well as all structures necessary for the housing of animals, storage of feed and equipment, and other operations customarily incidental to farm use.

(SALDO § 108.C; Zoning Ordinance § 113.) Ebbert places much weight on the numerous findings made by the Board which would indicate that the Property is used for an agricultural purpose, *i.e.*, the Property is used to raise and breed horses. Our initial inquiry, however, is whether the definition of a farm mandates that the Property must contain a dwelling unit in order to be considered a farm for purposes of obtaining a zoning permit.

The Board found that the language "[a] 'farm' shall be understood to include a dwelling unit" requires that a property contain a dwelling unit in order to be defined as a farm, while Ebbert argues that the appropriate interpretation is that a property predominantly used for an agricultural operation may also include a dwelling unit such as a farmhouse and still be defined as a farm.

Despite the deference afforded to the Board's interpretation, the Board's interpretation is clearly at odds with the plain language of the SALDO and the Zoning Ordinance. The language at issue cannot reasonably be understood to mandate that a property include a dwelling unit in order to be considered a farm. The first sentence of the ordinance mandates that a farm must be used for

8

"agricultural operations," *i.e.*, the production of agricultural products, livestock, poultry, or dairy products. (SALDO § 108.C; Zoning Ordinance § 113.) The following language "shall be understood to include" is permissive language demonstrating that a property may include a dwelling unit, as well as structures designed to house animals and store feed. *See Dotter v. Zoning Hearing Bd. of Kennedy Twp.*, 531 A.2d 1194, 1196 (Pa. Cmwlth. 1987) (holding that phrase "shall be understood to include" is merely illustrative of permitted uses under zoning ordinance).

Under the Board's interpretation of the phrase "shall be understood to include," the definition of a farm would also *require* that a parcel of land contain not only a dwelling unit, but "all structures necessary for the housing of animals, storage of feed and equipment, and other operations customarily incidental to farm use." (SALDO § 108.C; Zoning Ordinance § 113.) To require that a farm contain "all structures necessary for the housing of animals, storage of feed and equipment" would also exclude any farms that solely produce crops rather than raise animals. To limit the definition of farm to include only land used to raise livestock would directly contravene the definition of agriculture set forth in the Zoning Ordinance, which defines agriculture as "[t]he tilling of the soil, the raising of crops, horticulture and/or the keeping and raising of livestock." (Zoning Ordinance § 113.) The final clause of the definition is particularly telling. It would be absurd to require that a farm must contain all "other operations customarily incidental to farm use," because what is customary may vary widely depending on the size and type of farm. Read as a whole, it is clear that the intent of the definition was to ensure that a property was not excluded from the definition of a farm merely because it contained a dwelling unit. Accordingly, the Board

9

erred in interpreting the definition of a farm to require that a parcel of land include a dwelling unit.

Having determined that the Board erred in finding that the SALDO and Zoning Ordinance require a parcel of land to contain a dwelling unit in order to be defined as a farm, we now turn to Ebbert's argument that the facts found by the Board on remand clearly demonstrate that Ebbert's property is a farm.

Under both the SALDO and the Zoning Ordinance, a farm must be "used for one (1) or more agricultural operations, including but not necessarily limited to the raising of agricultural products, livestock, poultry, or the production of dairy products." (SALDO § 108.C; Zoning Ordinance § 113.) Although the terms "agricultural operations," "agricultural products," and "livestock" are not defined within the SALDO, the Zoning Ordinance expressly includes horses in the definition of livestock and defines agriculture as "[t]he tilling of the soil, the raising of crops, horticulture, and/or the keeping or raising of livestock such as. . . horses . . . and other similar animals for commercial distribution."[6]

In its decision, the Board made several findings of fact. The Board found that "[Ebbert] presently has twenty-one (21) horses on the Property. The

---

[6] Neither party entered the entirety of either the Zoning Ordinance or the SALDO into the record. Pursuant to Section 6107 of the Judicial Code, 42 Pa. C.S. § 6107, we take judicial notice of both the Zoning Ordinance and the SALDO. *Valley Forge Sewer Auth. v. Hipwell*, 121 A.3d 1164, 1168 n.5 (Pa. Cmwlth. 2015).

The Zoning Ordinance can be found online at: http://www.uppersaucon.org/wp-content/uploads/2016/02/ord141-A.pdf, last visited on October 19, 2016.

The SALDO can be found online at: http://www.uppersaucon.org/wp-content/uploads/2016/02/ord145-SALDO.pdf, last visited on October 19, 2016.

10

horses are involved in breeding, and, once the breeding occurs, the foals and colts are sold." (Reproduced Record (R.R.) at 232.) The Board also found that "between seven (7) and ten (10) babies born each year [] are generally sold." (*Id*.) With regard to the proposed barn, the Board found that "[t]he barn would contain 28 stalls for horses, but also provide area inside where the horses could be exercised and washed, especially in inclement weather." (R.R. at 234.) Notably, the Board expressly found that "[t]he use of the property would be for the raising of horses, feeding horses, and caring for the horses." (*Id.*) And regarding Ebbert's future plans for the farm, the Board found that "Ebbert indicated that there was no intent to have people ride on the Property, [sic] it was always their intention that this would be a private breeding operation." (R.R. 233.)

It is apparent from the Board's findings of fact that the Property is currently used for an agricultural operation, *i.e.*, the breeding, raising, and sale of horses, or is otherwise used for the raising of livestock within the definition set forth in the Zoning Ordinance. Additionally, it is clear that the purpose of the proposed barn is directly in furtherance of the Property's agricultural purpose, and Ebbert has no intention of changing the character of the land's usage. We conclude, therefore, that the Board erred in determining that the Property was not a farm within the definitions set forth in the Zoning Ordinance and the SALDO.[7]

---

[7] In its brief, the Township urges this Court to affirm the Board's decision on alternative grounds. The Township argues that the replacement of the temporary "run-in sheds" currently used to shelter Ebbert's horses would constitute a new principal use of the land rather than an accessory use. Under the Zoning Ordinance, the addition of a new "use of land or structure that is most dominant" is a new principal use which is not exempt from the land usage plan requirement. (Zoning Ordinance § 113(B).) The Township's argument is without merit. *See Allegheny W. Civic Council, Inc. v. Zoning Bd. of Adjustment of City of Pittsburgh,* 94 A.3d 450, 456 (Pa. Cmwlth. 2014). The Zoning Ordinance defines use as the
**(Footnote continued on next page…)**

Accordingly, the order of the trial court affirming the decision of the Board is reversed.

_____
P. KEVIN BROBSON, Judge

_____
**(continued…)**

"specific purpose(s) for which *land* or structure is designed, arranged, *intended, occupied, or maintained*." (Zoning Ordinance § 113(B) (emphasis added).) Both the current and intended use of the Property is as a horse farm. Ebbert's construction of a new barn does not change the use of the land itself, but merely supplements and enhances it. In other words, the sheltering of horses is an accessory use incidental to a horse farm.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Suzanne M. Ebbert,           :
                Appellant    :
                             :
        v.                   :    No. 347 C.D. 2016
                             :
Upper Saucon Township Zoning :
Board, Upper Saucon Township,:
Douglas and Carolyn Shoenberger :

# **O R D E R**

AND NOW, this 21st day of November, 2016, the Order of the Court of Common Pleas of Lehigh County (trial court) in the above-captioned matter is hereby REVERSED, and the matter is remanded to the trial court with instruction that it remand the matter to the Upper Saucon Township Zoning Hearing Board to issue the zoning permit.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge