IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Pascal and Chris Gates,　　　　:
　　　　　　　　Appellants　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
City of Pittsburgh Zoning Board of　　:
Adjustment and City of Pittsburgh　　:　　No. 97 C.D. 2019
and East Ohio Capital, LLC　　　　　　:　　Argued: October 3, 2019


BEFORE:　　HONORABLE RENÉE COHN JUBELIRER, Judge
　　　　　　HONORABLE ANNE E. COVEY, Judge
　　　　　　HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY　　　　　　　　　　　　FILED: February 28, 2020


　　　　　Stephen Pascal (Pascal) and Chris Gates (Gates) (collectively, Objectors) appeal from the Allegheny County Common Pleas Court's (trial court) December 19, 2018 order affirming the City of Pittsburgh (City) Zoning Board of Adjustment's (ZBA) decision and dismissing Objectors' appeal.  Objectors present three issues for this Court's review: whether the trial court erred by affirming the ZBA's grant of (1) a variance from Section 914.06.A and B of the City's Pennsylvania Code of Ordinances, Zoning Code (Code) to East Ohio Capital, LLC (Applicant) for a van-accessible parking space; (2) a special exception for off-site parking pursuant to Section 914.07.G.2(a) of the Code; and (3) an exception for no-loading space pursuant to Sections 914.10.A and 914.11.A of the Code.  After review, we affirm.

　　　　　Applicant owns the vacant property located at 707 East Street, Pittsburgh, Pennsylvania (Property), in a Local Neighborhood Commercial zoning district (LNC

District),[1] in the City's East Allegheny neighborhood. The Property contains a two- and three-story structure that extends to all four property lines and includes an interior two-car garage bay at the rear of the building. Applicant seeks to convert the building, most recently used as a funeral home, into a six-unit multi-family residential dwelling with a first-floor office (limited). Applicant retained the services of Hart Architectural Services, LLC (HAS) to redesign the Property.

At issue in this case are three of the City's parking requirements. Section 914.06.A of the Code requires that the Property have at least one Americans with Disabilities Act of 1990 (ADA)[2]-compliant van-accessible space served by an eight-foot-wide access aisle.[3] HAS's design proposed that the Property will have one

---

[1] The purpose of the LNC District is to:

> 1. Maintain the small scale and rich diversity of neighborhood-serving commercial districts;
>
> 2. Promote and enhance the quality of life in adjacent residential areas; and
>
> 3. Reduce the adverse impacts that are sometimes associated with commercial uses in order to promote compatibility with residential development.

*Demko v. City of Pittsburgh Zoning Bd. of Adjustment*, 155 A.3d 1163, 1164 n.2 (Pa. Cmwlth. 2017) (quoting Code § 904.02.A).

[2] 42 U.S.C. §§ 12101-12213.

[3] Section 914.02.A of the Code mandates that multi-unit residences have a minimum of one and a maximum of two off-street parking spaces. *See* Code § 914.02.A; Reproduced Record (R.R.) at 189. Section 914.06.A of the Code mandates that the Property have at least one space reserved for persons with disabilities, and that

> [o]ne (1) in every eight (8) accessible spaces, but not less than one (1), shall be served by an access aisle eight (8) feet wide minimum and shall be designated 'van accessible' as required by [the ADA]. The vertical clearance at such spaces shall comply with [the ADA]. All such spaces may be grouped on one (1) level of a parking structure.

Code § 914.06.A; R.R. at 198-199. Section 914.06.B of the Code further specifies, in relevant part:

> Parking access aisles shall be part of an accessible route to the building or facility entrance and shall be five (5) feet wide, except parking spaces reserved for vans, which shall be eight (8) feet wide in

2

standard parking space and one van-accessible parking space in the existing garage, but the van-accessible parking space would not meet the dimensional requirements. *See* Reproduced Record (R.R.) at 99-100.[4]

In addition, pursuant to Section 914.07.G.2(a) of the Code, the ZBA is authorized to consider and approve off-street parking alternatives, including off-site parking, as special exceptions if the applicant can show that the proposed plan will yield a better result. Based upon HAS's design, Applicant proposed to sublease three parking spaces on Nash Street from Priory Hospitality Group (Priory).[5] *See* R.R. at 46, 103-105.

Section 914.10.A of the Code requires that "[o]ff-street loading spaces shall be provided on the site of new or expanded uses, in accordance with the minimum standards," Code § 914.10.A; R.R. at 210, which is one off-street loading space for multi-unit residential properties of 2,401 to 20,000 square feet. *See* R.R. at 211. Here, due to the Property's space constraints, HAS's design did not provide for an off-street loading space. *See* R.R. at 101.

On April 10, 2018, Applicant, by and through HAS representatives Nathan Hart (Hart) and Geoff DiBeneditto, applied to the ZBA for: (1) a dimensional variance from Code Section 914.06.A for its proposed van-accessible parking space; (2) a special exception for its off-site parking pursuant to Code Section 914.07.G.2(a); and (3) a variance from Code Section 914.10.A off-street loading requirement, such

accordance with Sec[tion] 914.06.A [of the Code]. Two (2) accessible parking spaces may share a common access aisle. Parked vehicle overhangs shall not reduce the clear width of an accessible route. Parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (two (2) percent) in all directions.

Code § 914.06.B; R.R. at 199.

[4] Objectors' Reproduced Record page numbers are not "followed . . . by a small a," as Pennsylvania Rule of Appellate Procedure 2173 requires. Pa.R.A.P. 2173.

[5] Priory leases its Nash Street property from the City. *See* R.R. at 46, 103-105. According to HAS Representative Nathan Hart, Priory underutilizes its parking spaces. *See* R.R. at 103-104.

that the Property was not required to have one, and Applicant would use on-street parking as necessary. *See* R.R. at 26.

The ZBA conducted a hearing on May 3, 2018, at which Objectors (Gates in person, *see* R.R. at 109-117; and Pascal by letter, *see* R.R. at 47-48, 118), who own nearby properties, opposed the application. On June 21, 2018, the ZBA granted Applicant: (1) a variance from Sections 914.06.A and B of the Code for the van-accessible space with modified dimensions, subject to the condition that Applicant obtain the necessary Department of Labor and Industry (L&I) approvals to maintain an on-site van-accessible parking space with dimensions less than those mandated by the ADA; (2) a special exception for Applicant to sublease off-site parking pursuant to Section 914.07.G.2(a) of the Code, as long as Applicant records the sublease; and (3) a "variance/special exception" under Sections 914.10.A and 914.11.A of the Code, so that Applicant was not required to have an off-street loading space. R.R. at 7; *see also* R.R. at 8-9. On July 20, 2018, Objectors appealed from the ZBA's decision to the trial court. Applicant and the City intervened. The trial court did not take new evidence. On December 19, 2018, the trial court affirmed the ZBA's decision and dismissed Objectors' appeal. *See* R.R. at 176-182. Objectors appealed to this Court.[6]

### Variance from Code Section 914.06.A and B
### (for non-compliant van-accessible parking space)

Objectors first argue that the trial court erred by affirming the ZBA's grant of a variance from Section 914.06.A and B of the Code to Applicant for a van-accessible parking space because Applicant did not satisfy the criteria necessary to establish entitlement to a variance. Objectors specifically claim that Applicant failed to prove that the Property is burdened by a hardship and cannot be developed in strict

---

[6] "Where, as here, the trial court does not take additional evidence, the [ZBA's] decision must be upheld unless [it] committed an error of law or a manifest abuse of discretion." *Demko*, 155 A.3d at 1167 (quotation marks omitted).

conformity with the Code, and that the ZBA applied an overly broad interpretation of *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43 (Pa. 1998), to the dimensional requirements for a van-accessible parking space.

Section 922.09.E of the Code sets forth the ZBA's variance approval criteria:[7]

> No variance in the strict application of any provisions of this [Code] shall be granted by the [ZBA] unless it finds that all of the following conditions exist:
>
> 1. That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to the conditions, and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located;
>
> 2. That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the [Code] and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;
>
> 3. That such unnecessary hardship has not been created by the [applicant];
>
> 4. That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or

---

[7] This Court relies exclusively upon the Code because "[t]he [Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202,] does not apply to . . . the City of Pittsburgh." *Allegheny W. Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 94 A.3d 450, 454 (Pa. Cmwlth. 2014); *see also Broussard v. Zoning Bd. of Adjustment of City of Pittsburgh*, 907 A.2d 494 (Pa. 2006).

5

development of adjacent property, nor be detrimental to the public welfare; and

5. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

In granting any variance, the [ZBA] may attach such reasonable conditions and safeguards as it may deem necessary to implement to purposes of this act and the [Code].

The applicant shall have the burden of demonstrating that the proposal satisfies the applicable review criteria.

Code § 922.09.E; R.R. at 220.

Where, as here [relative to the van-accessible parking space], we are faced with a dimensional variance, our Supreme Court has articulated a more relaxed standard for granting a variance. Under this relaxed standard, when addressing the element of unnecessary hardship, 'courts may consider multiple factors, including the economic detriment to the applicant if the variance [is] denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood.' *Hertzberg* . . . , 721 A.2d [at] 50. . . . Although *Hertzberg* eased the requirements for a variance, it did not remove them. *Tidd v. Lower Saucon T*[*wp.*] *Zoning Hearing B*[*d.*], 118 A.3d 1 (Pa. Cmwlth. 2015). Moreover, despite a more relaxed standard, it is still the case that '[t]he burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling.' *Singer v. Phila*[.] *Zoning B*[*d.*] *of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011).

*Demko v. City of Pittsburgh Zoning Bd. of Adjustment*, 155 A.3d 1163, 1168 (Pa. Cmwlth. 2017).

At the ZBA hearing, Hart testified that, since the building extends to the property line, on-site parking is precluded except in the garage. *See* R.R. at 99. Hart explained:

6

[The garage] would be dedicated to the residents. The City has advised us that [it] would want to see that van space that's referenced there as the sole occupant of that two car garage. We [] actually have an illustration here, pending approval from the state, a way that we can maintain access to a van as well as park a second car, kind of in tandem.

R.R. at 99. However, Hart admitted that, to carry out Applicant's proposal, the van-accessible parking space would "not meet the letter of the law in terms of a full[-]depth accessible aisle adjacent [thereto.]" R.R. at 100.

Section 922.09.D of the Code mandates: "The [ZBA's] action shall be based on stated findings of fact." Code § 922.09.D; R.R. at 219. The law is well settled that "[a] [zoning] board abuses its discretion when its findings are not supported by substantial evidence." *Hawk v. City of Pittsburgh Zoning Bd. of Adjustment*, 38 A.3d 1061, 1064 n.5 (Pa. Cmwlth. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might consider as adequate to support a conclusion." *Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1226 n.9 (Pa. Cmwlth. 2007).

Here, the ZBA made the following relevant findings of fact (FOF):

5. [] Applicant intends to provide one standard parking space and one [van-]accessible parking space in the existing garages, within the building. The proposed [van-]accessible [parking] space would not strictly comply with the Code's dimensional requirements for [van-]accessible parking spaces, as set forth in [] Section 914.06.A [of the Code] but would allow for an on-site [van-]accessible [parking] space, with the shortest accessible route to the proposed uses. In addition to the requested variance from the City's dimensional requirements for [van-]accessible [parking] spaces, the [van-]accessible [parking] space, as proposed, would require additional approval from the [L&I].

. . . .

10. [Gates] appeared at the hearing to oppose [] Applicant's request, citing concerns about accessibility, parking and speculated as to the potential impact of the proposed uses on nearby residential properties. The [ZBA] found his concerns

7

to be speculative and not credible with respect to the specific relief requested here.

ZBA Dec. at 1-2; R.R. at 7-8. The ZBA reached the following relevant conclusion of law (COL):

> Two garage bays are located within the existing building. The dimensions of the interior parking area are not sufficient to allow for [a] [van-]accessible parking space that would strictly comply with the Code's dimensional requirements for [a] [van-]accessible [parking] space, but would allow for an on-site [van-]accessible [parking] space. The limitations of the existing interior parking is a condition unique to the building and, under the standards for dimensional variances set forth in *Hertzberg* . . . , constitute a hardship sufficient to justify the requested variance from the dimensional standards for the [van-]accessible [parking] space. The [ZBA] thus concludes that approval of a dimensional variance to allow for the proposed interior [van-]accessible [parking] space is appropriate, subject to the additional approval of [L&I].

ZBA COL 4; ZBA Dec. at 3; R.R. at 9. Accordingly, the ZBA approved Applicant's dimensional variance, subject to L&I approval. *See* ZBA Dec. at 3; R.R. at 9. The trial court agreed.

> This Court may not substitute its interpretation of the evidence for that of the [ZBA]. It is the [ZBA's] function to weigh the evidence before it. The [ZBA] is the sole judge of the credibility of witnesses and the weight afforded their testimony. [This Court] must view the evidence in a light most favorable to the prevailing party, who must be given the benefit of all reasonable inferences arising from the evidence.

*Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 13 (Pa. Cmwlth. 2015) (citations omitted). Viewing the evidence in Applicant's favor as it must, this Court concludes that there was substantial evidence to support the ZBA's findings and conclusions that Applicant met the conditions of Section 922.09.E of the Code

8

necessary to obtain a dimensional variance. Accordingly, the ZBA properly granted Applicant a variance for a van-accessible parking space.

### Special Exception Pursuant to Code Section 914.07.G.2(a)
### (for off-site parking spaces)

Objectors also contend that the trial court erred by affirming the ZBA's grant of a special exception for off-site parking pursuant to Section 914.07.G.2(a) of the Code because the ZBA failed to adequately consider the Code's special exception criteria. Objectors generally assert that the ZBA failed to consider or make any findings relative to traffic, parking and the impact on future development the proposed conversion would have on the neighborhoods surrounding the Property. Objectors specifically argue that Applicant did not produce evidence that the proposed sublease was permissible and, nevertheless, failed to meet the minimum parking space requirements.

Preliminarily,

> [a] special exception is a permitted use to which the applicant is entitled if the applicant demonstrates compliance with the specific, objective requirements contained in a zoning ordinance and if the zoning board determines that the use would not adversely affect the community. The applicant has the burden to show that its application complies with the specific criteria delineated in the ordinance. By showing compliance with the specific criteria, the applicant establishes that the proposal is presumptively consistent with the promotion of the public health, safety and welfare. To overcome this presumption, an objector must prove to a high degree of probability that the impact from the proposed use will substantially affect the health, safety and welfare of the community to a greater extent than would be expected normally from that type of use. The objector does not meet its burden with speculation.

*Blancett-Maddock v. City of Pittsburgh Zoning Bd. of Adjustment*, 6 A.3d 595, 600 (Pa. Cmwlth. 2010) (citations omitted).

9

[A] special exception in a zoning ordinance is a use which is expressly permitted in a given zone so long as certain conditions detailed in the ordinance are found to exist. *See Appeal of Rieder*, . . . 188 A.2d 756, 757 ([Pa.] 1963).

> Thus, an exception has its origin in the zoning ordinance itself. It relates only to such situations as are expressly provided for and enunciated by the terms of the ordinance. The rules that determine the grant or refusal of the exception are enumerated in the ordinance itself.

*Kotzin v. Plymouth T[wp.] Zoning Bd. of Adjustment*, . . . 149 A.2d 116, 117-18 ([Pa.] 1959). . . .

When a landowner applies to municipal authorities for a special exception, the zoning board's function 'is to determine that such specific facts, circumstances and conditions exist which comply with the standards of the ordinance and merit the granting of the exception.' *Kotzin*, . . . 149 A.2d at 118.

*Broussard v. Zoning Bd. of Adjustment of City of Pittsburgh*, 907 A.2d 494, 499 (Pa. 2006) (footnote omitted).

Regarding off-site parking, Section 914.07.G.2(a) of the Code provides, in relevant part:

The [ZBA] shall be authorized, in accordance with the [s]pecial [e]xception provisions of Sec[tion] 922.07 [of the Code], to permit all or a portion of the required off-street parking spaces to be located on a remote and separate lot from the lot on which the primary use is located, subject to the following standards.

(1) Location

No off-site parking space shall be located more than one thousand (1,000) feet from the primary entrance of the use served, measured along the shortest legal, practical walking route. This distance limitation may be waived by the [ZBA] if adequate assurances are offered that van or shuttle service will be operated between the shared lot and the primary use.

. . . .

(4) Off-Site Parking Agreement

In the event that an off-site parking area is not under the same ownership as the primary use served, a written agreement among the owners of record shall be required. An attested copy of the agreement between the owners of record shall be submitted to County Recorder's Office for recordation on forms made available in the office of the Zoning Administrator.[8] Proof of recordation of the agreement shall be presented to the Zoning Administrator prior to issuance of a building permit.

Code § 914.07.G.2(a); R.R. at 202-203 (emphasis added).

Section 922.07.D.1 of the Code directs relative to special exceptions:

The [ZBA] shall approve [s]pecial [e]xceptions only if[:] (1) the proposed use is determined to comply with all applicable requirements of this Code and with adopted plans and policies of the City[;] and (2) the following general criteria are met:

(a) That the development will not create detrimental visual impacts, such that the size and visual bulk of the proposed development is determined to create an incompatible relationship with the surrounding built

---

[8] Despite this Court's March 8, 2019 order directing Applicant "to file a copy of the entire applicable ordinance or code with this [C]ourt" that is "relevant to this appeal," Applicant only supplied those Code provisions to which it referred in its argument. March 8, 2019 Order. Therefore, this Court takes judicial notice of the official Code on the City's website, as authorized by Section 6107(a) of the Pennsylvania Rules of Civil Procedure, which states that "[t]he ordinances of municipal corporations of the Commonwealth shall be judicially noticed." Pa.R.C.P. No. 6107(a). Moreover, this Court has ruled that it "may take judicial notice of information provided on a website." *In re York Cty. Tax Claim Bureau*, 3 A.3d 765 n.10 (Pa. Cmwlth. 2010), *disapproved of on other grounds by Horton v. Wash. Cty. Tax Claim Bureau*, 81 A.3d 883 (Pa. 2013).

According to Section 923.03.A of the Code, the City's zoning administrator is "a staff member of the Department of City Planning so designated by the City Planning Commission, who is herein charged with the administration of [the Code]." Code § 923.03.A. PITTSBURGH, PA, CODE § 923.03.A, https://library.municode.com/pa/pittsburgh/codes/code_of_ordinances?nodeId=PIZOCO_TITNINE ZOCO_ARTVIIREEN_CH923REDEMA_923.03ZOAD (last visited 2/26/2020).

environment, public streets and open spaces and land use patterns;

(b) That the development will not create detrimental transportation impacts, such that the proposed development is determined to adversely affect the safety and convenience of residential neighborhoods or of vehicular and pedestrian circulation in the vicinity of the subject tract;

(c) That the development will not create detrimental transportation impacts, such that the proposed development will result in traffic volumes or circulation patterns that substantially exceed the capacity of streets and intersections likely to be used by traffic to and from the proposed development;

(d) That the development will not create detrimental operational impacts, including potential impacts of hours of operation, management of traffic, servicing and loading operations, and any on-site operations associated with the ongoing functions of the use on the site, in consideration of adjacent and surrounding land uses which may have differing sensitivities to such operational impacts;

(e) That the development will not create detrimental health and safety impacts, including but not limited to potential impacts of noise, emissions, or vibrations from the proposed development, or functions within the proposed site which would otherwise affect the health or safety of others as a direct result of the operation of the proposed use;

(f) That the development will not create detrimental impacts on the future and potential development of parcels in the vicinity of the proposed site of the development; and

(g) That the development will not create detrimental impacts on property values.

Code § 922.07.D.1; R.R. at 217-218.

At the ZBA hearing, Hart described that Applicant has reached an agreement whereby it would sublease three of Priory's parking spaces near the Property. Based thereon, the ZBA found: "Applicant proposes to provide three off-site parking spaces in an existing parking lot located at 707 Nash Street, which is located approximately 0.1 mile or 528 feet from the [] Property and is in the LNC District."[9] ZBA FOF 6; ZBA Dec. at 2; R.R. at 8.

> The [ZBA] conclude[d] that the Applicant presented substantial credible evidence to demonstrate that the proposed off-street parking spaces are within less than 1,000 feet of the [] Property; [are] within the same zoning district; and [are] subject to an off-site parking agreement that will be record[ed]. No contrary evidence was presented. The [ZBA] thus concludes that approval of a special exception for off-site parking is appropriate.

ZBA COL 3; ZBA Dec. at 2; R.R. at 8. Thus, the ZBA approved Applicant's request for a special exception to allow off-site parking in Priory's lot, subject to sublease recording. *See* ZBA Dec. at 3; R.R. at 9. The trial court agreed.

Viewing the evidence in Applicant's favor, as we must, this Court concludes that there was substantial evidence to support the ZBA's findings and conclusions, and "[b]y showing compliance with the specific criteria, [Applicant] establishe[d] that the proposal is presumptively consistent with the promotion of the public health, safety and welfare." *Blancett-Maddock*, 6 A.3d at 600. Because Applicant satisfied the conditions of Section 914.07.G.2(a) of the Code, the ZBA properly granted Applicant the special exception for off-site parking spaces.

---

[9] Based upon this Court's record review, Hart testified that the Priory parking spaces were located approximately three or four blocks from the Property. *See* R.R. at 105. It is unclear where the trial court obtained the precise distance measurements upon which its finding and conclusion are based.

**Exception Relative to Code Sections 914.10.A and 914.11.A**
**(no off-street loading space is required)**

Lastly, Objectors claim that the trial court erred by affirming the ZBA's grant of a variance/special exception from the off-street loading space requirements of Section 914.10.A and 914.11.A of the Code.

Section 914.10.A of the Code mandates that multi-unit residences with a floor area of 2,401 to 20,000 square feet must have at least one off-street loading space. *See* Code § 914.10.A; R.R. at 211. Section 914.11.B.2 of the Code authorizes exceptions to the Code's off-street loading space requirement as follows:

> The Zoning Administrator may authorize an exception to the off-street loading standards of Sec[tion] 914.10.A [of the Code], provided that the Zoning Administrator determines that projected vehicular service volumes do not warrant the provision of the number of off-street loading spaces otherwise required and that such volume will not cause undue interference with the public use of streets or ways, nor imperil public safety.

Code § 914.11.B.2; R.R. at 215. The term "exception," as used in Section 914.11.B.2 of the Code, refers to an administrator exception, rather than a special exception, and that provision authorizes the City's Zoning Administrator, rather than the ZBA, to authorize such exceptions in the first instance.[10] However, since appeals from Zoning Administrator decisions relative to off-street loading space exceptions are made to the ZBA, *see* Section 922.08.C of the Code, Code § 922.08.C (relating to Administrator Exception action) and Section 923.02.B.1 of the Code, Code § 923.02.B.1 (relative to

---

[10] Whereas Section 923.02.B.4 of the Code grants the ZBA the power "[t]o hear and decide special exceptions . . . in accordance with Sec[tion] 922.07 [of the Code,]" Code § 923.02.B.4, Section 923.03.A of the Code clarifies that "[t]he Zoning Administrator shall administer Administrator Exceptions pursuant to Sec[tion] 922.08 [of the Code (relating to Administrator Exceptions)]." Code § 923.03.A.
PITTSBURGH, PA, CODE §§ 922.03A, 923.02.B.4, https://library.municode.com/pa/pittsburgh/codes/code_of_ordinances?nodeId=PIZOCO_TITNINE ZOCO_ARTVIIREEN_CH923REDEMA_923.03ZOAD (last visited 2/26/2020).

ZBA powers), this Court concludes that Applicant's failure to first submit the matter to the Zoning Administrator in this case was harmless.

Hart stated at the ZBA hearing that the Property's constraints would not allow for the off-street loading space that the Code requires. *See* R.R. at 101. Hart explained that the Property's limited commercial use would necessitate only an occasional two-minute Amazon-type delivery, and the vehicles could be parked on the street or in the immediately adjacent alley for those brief times. *See* R.R. at 101-102.

The ZBA found: "[S]treet parking in the immediate vicinity of the [] Property could accommodate the limited requirements for loading for the proposed residential and office uses, without frequent or significant disruptions to traffic or parking." ZBA FOF 7; ZBA Dec. at 2; R.R. at 8. The ZBA concluded:

> Pursuant to Section 914.11.A [of the Code[11]], the [ZBA] may modify requirements for loading requirements as a special exception. Based on the credible evidence presented, the [ZBA] concludes that the loading needs for the proposed uses will be limited and, when loading is necessary, will not result in significant or prolonged disturbances to traffic or parking. The existing building extends to all property lines, precluding the provision of an off-street loading space. The [ZBA] thus concludes that modification of the loading space requirement is appropriate.

ZBA COL 5; ZBA Dec. at 3; R.R. at 9. Accordingly, the ZBA granted Applicant relief from the Code's off-street loading space requirement. *See* ZBA Dec. at 3; R.R. at 9. The trial court agreed.

---

[11] Objectors argued that the ZBA granted a special exception for off-street *loading* pursuant to a Code provision for off-street *parking*. This Court observes that Section 914.11.A of the Code, upon which the ZBA relied in reaching its decision, authorizes the ZBA to grant special exceptions to Section 914.10.A of the Code for off-street *parking*, which was not at issue here. *See* R.R. at 213-214. Although the ZBA referenced an incorrect Code provision to support its decision, since it is clear that the ZBA intended to grant relief from the Code's off-street loading space requirements, the error was harmless.

15

Viewing the evidence in Applicant's favor, as we must, this Court concludes that there was substantial evidence to support the ZBA's findings and conclusions that Applicant met the criteria necessary for an exception from Code's off-street loading space requirements. Accordingly, the ZBA properly granted Applicant an off-street loading space exception.

## Conclusion

For the foregoing reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Pascal and Chris Gates, : 
       Appellants : 
           : 
           : 
    v. : 
           : 
           : 
City of Pittsburgh Zoning Board of : 
Adjustment and City of Pittsburgh :   No. 97 C.D. 2019
and East Ohio Capital, LLC : 

## O R D E R

   AND NOW, this 28ᵗʰ day of February, 2020, the Allegheny County Common Pleas Court's December 19, 2018 order is affirmed.

             _____
             ANNE E. COVEY, Judge